```
1  NORMAN E. MATTEONI (SBN 34724)
   norm@matteoni.com
2  GERALD HOULIHAN (SBN 214254)
   gerry@matteoni.com
3  MATTEONI, O'LAUGHLIN & HECHTMAN
4  848 The Alameda
   San Jose, CA  95126
5  Telephone:  (408) 293-4300
   Facsimile:  (408) 293-4004
6
7  Attorneys for Plaintiffs BLAZE, INC. and
   JACQUELINE LOPEZ-FLORES
8
```



SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

| | |
|---|---|
| BLAZE, INC., a California corporation; and JACQUELINE LOPEZ-FLORES, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>VF MALL, LLC, a Delaware limited liability company; DOES 1-10, inclusive,<br><br>Defendants. | Case No. 1-15-CV-280113<br><br>FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT; INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; FRAUD AND DECEIT—SUPPRESSION OF FACT, INTENTIONAL MISREPRESENTATION, NEGLIGENT MISREPRESENTATION; UNFAIR BUSINESS PRACTICES (B.&P.C. §17200); AND DAMAGES<br><br>Complaint Filed:  May 1, 2015 |

Come now, Plaintiffs BLAZE, INC. and JACQUELINE LOPEZ-FLORES, and allege against Defendants as follows:

## GENERAL ALLEGATIONS

1. At all times herein mentioned, Plaintiff BLAZE, INC. was and is a California corporation duly authorized to do business in California and actually doing business in the County of Santa Clara, California.

2. At all times herein mentioned, Plaintiff JACQUELINE LOPEZ-FLORES was and is a resident of the County of Santa Clara, California.

-1-
**FIRST AMENDED COMPLAINT**

3. At all times herein mentioned, Plaintiff JACQUELINE LOPEZ-FLORES was and is the president of BLAZE, INC. and the personal guarantor of the obligations of BLAZE, INC. pursuant to the Lease referred to in this Complaint.

4. At all times herein mentioned, Defendant VF MALL is a Delaware limited liability company doing business in the County of Santa Clara, California.

5. The true names of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Doe defendants is liable to Plaintiffs in some manner under the Lease, or otherwise. Plaintiffs will ask leave of the Court to allege their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the Doe defendants sued herein was the agent or employee of each of the remaining Defendants and was at all times acting within the purpose and scope of such agency and employment.

6. On or about September 30, 2010, Plaintiff BLAZE, INC., as Tenant, and Defendant VF MALL, LLC ("VF MALL") as Landlord, entered into a written Lease for the commercial premises at Valley Fair described as Westfield Valley Fair, 2855 Stevens Creek Boulevard, Store No. A123, Santa Clara, California (the "Premises"), and as more particularly described in the Lease. Plaintiff BLAZE, INC. and Defendant VF MALL subsequently agreed to three written Amendments to the Lease. A true and correct copy of the Lease, as amended, is attached hereto as Exhibit "A" and incorporated herein by reference.

7. As a condition of entering into said Lease, Defendant VF MALL required that plaintiff JACQUELINE LOPEZ-FLORES personally guarantee, in writing, the obligations of BLAZE, INC. under said Lease, including the full, faithful and timely payment and performance by BLAZE, INC. of all the payments, covenants and other obligations of BLAZE, INC. under or pursuant to the Lease. In her capacity as president of BLAZE, INC. and as an individual, Plaintiff JACQUELINE LOPEZ-FLORES signed written Guaranties of

-2-
FIRST AMENDED COMPLAINT
Case: 18-52014    Doc# 78-2    Filed: 07/15/19    Entered: 07/15/19 17:43:19    Page 2 of 15

the Lease on or about September 24, 2010 and April 25, 2012. As a Guarantor, Plaintiff JACQUELINE LOPEZ-FLORES is exposed to personal liability to Defendant VF MALL should Plaintiff BLAZE, INC. breach or fail to perform under said Lease. True and correct copies of the Guaranties executed by JACQUELINE-FLORES are part of <u>Exhibit A</u>.

8. The form Lease and its Amendments were prepared by attorneys or other representatives of Defendant VF MALL and Plaintiffs were required, as a condition of leasing the Premises, to sign the form Lease and Guaranties submitted to them by Defendant VF MALL. Plaintiffs are informed and believe and thereon allege that VF MALL uses the same basic lease forms for dozens of other tenants at the Westfair Valley Fair Mall including, but not limited to, clothing and apparel stores, without regard to the tenant's particular type of business or its required tenant improvements. The form Lease is inappropriate for use with a tenant who operates a restaurant or a restaurant/lounge with extended operating hours. As a consequence, VF MALL has misinterpreted key terms of the Lease in order to "fit" its desires, including misinterpreting the occurrence of the Term, Commencement Date, Rental Commencement Date, and Expiration Date of Term.

9. The original intent of Plaintiffs and VF MALL was that Plaintiffs were to demolish the existing abandoned restaurant in Store No. A123 and construct an upscale restaurant and lounge with extended hours to be operated by BLAZE, INC. Defendants were well aware that it would take many, many months for Plaintiffs to complete the build out and creation of the restaurant including the patio area. VF MALL agreed that the commencement of rent would not start until certain benchmarks were reached, as defined in the Lease. The terms and conditions of the Lease required VF MALL to approve all designs and plans for the restaurant including, but not limited to, its menu and signage.

10. During the initial design phase of the restaurant, it was agreed between Plaintiffs and VF MALL that BLAZE, INC. would construct and open a lounge as a dual business operation at the Premises. VF MALL was primarily represented by its leasing manager—Kurt Utterback ("Utterback")—in these discussions. Plaintiffs and VF MALL through Utterback and the General Manager mutually believed and agreed that having a

-3-
**FIRST AMENDED COMPLAINT**

restaurant and lounge would enhance the value of Plaintiffs' businesses, increase Plaintiffs' revenue, increase the rent to be paid to VF MALL pursuant to the Lease, and enhance the character of Valley Fair Mall to compete with the Santana Row Mall across Stevens Creek Boulevard. As a result of the agreement to construct and open a lounge, the Lease had to be amended to accommodate construction and operation of Plaintiffs' restaurant and lounge businesses. On or about November 22, 2010, Plaintiffs and VF MALL entered into written Lease Amendment No. 1, which provided for a change in operating times of Plaintiffs' businesses to accommodate the lounge hours from 2:00 a.m. to 3:00 a.m. On or about April 25, 2012, Plaintiffs and VF MALL entered into written Lease Amendment No. 2 to accommodate a new trade name for the restaurant, menu changes, and required signage. Lease Amendment No. 2 was necessary to allow Plaintiffs to apply for a conditional use permit, which was necessary for the operation of the lounge portion of Plaintiffs' business since the lounge will offer entertainment. On or about August 15, 2012, Plaintiffs and VF MALL executed into written Lease Amendment No. 3 to make changes to the manner in which VF MALL would pay to Plaintiffs a $350,000 Tenant Improvement Allowance. This Allowance was vital to the timely completion of the design and construction of Plaintiffs' restaurant and lounge, and Plaintiffs absolutely required the infusion of this vital capital.

11. As a result of the decision to construct and operate a lounge in the three Amendments to the Lease, Plaintiffs and VF MALL were well-aware that the design, approval, and construction phases of the Project would be considerably lengthened by months or even years. Plaintiffs and Utterback and VF MALL were aware that several governmental permits would have to be obtained by Plaintiffs in order to complete the Tenant's Work as defined by the Lease. These governmental permits include the following: (a) planning permit; (b) building permit; (c) environmental health permit; (d) environmental water and pollution permit; (e) signage permit; (f) conditional use permit; (g) entertainment permit; and (h) liquor license. Plaintiffs and VF MALL knew that it would be a difficult, complicated, and very time-consuming process to obtain approval of a

-4-
**FIRST AMENDED COMPLAINT**

conditional use permit ("CUP") from the San Jose Planning Department. Plaintiffs obtained the services of a land use consultant to assist in obtaining the CUP in 2011 and paid the required governmental fees. VF MALL, the Landlord, had to sign all CUP applications. The first CUP application was rejected in or about June, 2011 and Plaintiffs had to re-apply for the CUP. The CUP was approved on or about March 24, 2014 by the San Jose Planning Commission. Until final approval for the CUP was granted, Plaintiffs could not complete their business plan, introduce the lounge, and apply for the required entertainment permit.

12. After Plaintiffs took possession of the Premises on or about October 1, 2010, they were not required to pay any rent as per the terms and conditions of the Lease. The Lease specifically contemplates a lengthy period of time where no rent is owed by Plaintiffs during the time that they were planning, designing, and constructing their restaurant and lounge. Section 1.02 of the Lease specifically addresses the Rental Commencement Date. It is clearly provided for and contemplated by the Lease that Plaintiffs would have no contractual obligation to pay any rent to Defendant VF MALL until either the Tenant opens the Premises for business to the public or 90 days from the issuance to Tenant of all governmental permits necessary for Tenant to complete Tenant's Work and subject to VF MALL's review and approval of all of Tenant's plans.

13. Plaintiffs have applied for all governmental permits required to complete Tenant's Work. The governmental permits have been approved at various times during the construction of the restaurant and lounge. As required by the Lease, Plaintiffs submitted their plans and revised plans to VF MALL for review and approval. VF MALL provided its final approval of Plaintiffs' designs, plans and specifications for the restaurant and lounge on or about October 23, 2014. Plaintiffs were in the final stages of completing Tenant's Work as required by the Lease. Plaintiffs could not obtain approval of their application for an entertainment permit due to several conditions which must have been met before the San Jose Police Department would approve the entertainment permit.

///

-5-
**FIRST AMENDED COMPLAINT**

Case: 18-52014   Doc# 78-2   Filed: 07/15/19   Entered: 07/15/19 17:43:19   Page 5 of 15

Plaintiffs anticipated the entertainment permit would be approved in May, 2015 after which Plaintiffs would open for business to the public their restaurant and lounge.

14. On October 10, 2011, a company named Group One Construction, Inc. recorded a claim of Mechanic's Lien in the amount of $215,011 against the Premises. Group One Construction, Inc., through its president, falsely claimed that it was a contractor which provided labor, materials or services to improve the Premises on behalf of Plaintiffs. At the time, Saul Flores was a vice president of Group One Construction, Inc., its Responsible Managing Officer, and its construction license holder. Saul Flores is a board member and officer of BLAZE, INC. and is also in charge of construction of the restaurant and lounge. Saul Flores believed that the Group One Mechanic's Lien, filed without Saul Flores' knowledge or consent, was bogus, invalid, and should never have been recorded at the instance of Group One's president. In October, 2011, Saul Flores caused a valid Release of Group One's Mechanic's Lien to be recorded with the Santa Clara County Recorder. VF MALL was served with a copy of the Group One Mechanic's Lien and made demands upon Plaintiffs that they defend and indemnify VF MALL as to said Mechanic's Lien. Plaintiffs and Saul Flores provided a copy of the Mechanic's Lien Release to VF MALL and its counsel to show that the Mechanic's Lien was no longer on the Premises. VF MALL and its counsel refused to accept the validity of the Release, even though it was properly executed and recorded and they knew or should have known that Group One Construction's Mechanic's Lien was bogus. VF MALL demanded that Plaintiffs retain counsel at Plaintiffs' expense to obtain counsel to represent VF MALL as a defendant in Group One's lien foreclosure lawsuit, which was filed in the Santa Clara County Superior Court on or about January 6, 2012. Even though the Mechanic's Lien had been released, Plaintiffs agreed to defend and indemnify VF MALL as to the Group One lawsuit at great expense to Plaintiffs. As a purported result of the Mechanic's Lien, which had been validly released, VF MALL refused to pay Plaintiffs the first $175,000 installment of the Tenant Allowance as required by the Lease. The failure to timely pay the $175,000 installment caused great injury and harm to Plaintiffs because it substantially delayed their completion

-6-
**FIRST AMENDED COMPLAINT**

of the restaurant and lounge. Plaintiffs made numerous demands upon VF MALL that it pay the Allowance. Finally, in or about September, 2013, Plaintiffs were able to raise sufficient funds to essentially "bond around" the amended Mechanic's Lien, causing a second Release thereof to be recorded by Group One Construction, Inc. VF MALL accepted the second Release, which was redundant, and eventually paid the first installment of the Allowance to Plaintiffs, minus substantial deductions. As a result of VF MALL's refusal to honor the Release of the lien and its refusal to pay the first installment of the Allowance, Plaintiffs were compelled to inform potential investors that title was clouded. This disclosure dissuaded potential and existing investors and Plaintiffs had to self-capitalize the business and self-perform the Tenant's Work to a great extent.

15. During the pendency of Group One Construction, Inc.'s lien foreclosure lawsuit and well before the opening of Plaintiffs' business, and well before Plaintiffs obtained approval of all required governmental permits that were necessary to complete Tenant's Work as defined by the Lease, VF MALL falsely and in direct violation of the Lease demanded that Plaintiffs commence paying rent. Plaintiffs are informed and believe that VF MALL took the position that a building permit was supposedly the one and only "governmental permit" required by the Lease and that, according to VF MALL, the Rental Commencement Date occurred 90 days after the building permit was approved on December 8, 2011. Under no circumstances had the Rental Commencement Date, as defined by the Lease, occurred because the building permit was only one of many governmental permits required to complete construction and opening of the restaurant and lounge. As a result of VF MALL's false and improper demand to pay rent, Plaintiffs commenced to pay rent in or about March, 2012 under protest and in order to prevent VF MALL from bringing eviction proceedings against Plaintiffs or to otherwise interfere with or delay their construction of the restaurant and lounge. Plaintiffs have paid more than $700,000 of rent to VF MALL. In addition, Plaintiffs tendered three months of rent to VF MALL, but VF MALL has refused to accept the rent tendered by Plaintiffs.

///

-7-
**FIRST AMENDED COMPLAINT**

16. On February 3, 2015, VF MALL filed a Complaint for Unlawful Detainer in the above-entitled Court against BLAZE, INC.; Case No. 115CV276409 ("Unlawful Detainer Action"). In its Complaint for Unlawful Detainer, VF MALL alleged that BLAZE, INC. failed to pay it Rent and Additional Rent allegedly owed under the Lease. VF MALL falsely and without basis alleged that the Rental Commencement Date as defined by the Lease is March 7, 2012. VF MALL falsely claimed that Plaintiffs owe rent of more than $200,000. VF MALL sought to forfeit Plaintiffs' rights under the Lease and to evict Plaintiffs from the Premises, notwithstanding Plaintiffs' investment in the Premises of approximately $6 million and Plaintiffs taking every step necessary to complete construction of the restaurant and lounge and open for business.

17. Plaintiffs contend that the Rental Commencement Date has not occurred yet because BLAZE, INC.'s entertainment permit has not been approved yet by the San Jose Police Department and an entertainment permit is a "governmental permit" that is required for Plaintiffs to complete Tenant's Work in order to open for business. Plaintiffs allege that the absolute earliest Rental Commencement Date, defined by the Lease, is January 30, 2015, which is 90 days after VF MALL approved Plaintiffs' plans as per Section 1.02 of the Lease. The rent which Plaintiffs have paid to VF MALL far exceeds any rent which actually is owed to VF MALL under the terms and conditions of the Lease. Accordingly, VF MALL's Complaint for Unlawful Detainer was without merit and unlawfully and unfairly interfered with Plaintiffs' ability to open for business and protect their investment in the Premises.

18. Notwithstanding the clear facts showing that the Rental Commencement Date did not occur in 2012 and that, at the earliest, it occurred in 2015, VF MALL and its counsel persisted in prosecuting their Unlawful Detainer Action, persisted in refusing Plaintiffs' tenders of rent, and sought to evict Plaintiffs from the Premises.

19. VF MALL's Motion for Summary Judgment on the unlawful detainer matter was denied by the Honorable Carol Overton on August 6, 2015. A true and correct copy of the Order Re: Motion for Summary Judgment or, in the Alternative, Summary

-8-
**FIRST AMENDED COMPLAINT**

Adjudication is attached hereto as Exhibit "B" and incorporated herein by reference. Only then did VF MALL announce it was invoking Section 6.04(b) of the Lease regarding the lessor's expansion of the Shopping Center. This Lease provision requires VF MALL to pay for the unamortized value of the Plaintiff's improvements which VF MALL has refused to do. VF MALL failed to comply with Section 6.04(a), a precondition to invoking Section 6.04(b) termination.

20. Unknown by and undisclosed to Plaintiffs, in 2006, VF MALL completed an Environmental Impact Report ("EIR") to support a site development permit allowing for a 650,000 square foot expansion of the Valley Fair Mall. The proposed expansion calls for adding 213,180 square feet to each floor of the mall on the south side. The expansion encompassed BLAZE, INC.'s site and precluded the use of the patio since the second floor was being expanded southward over it. The proposed new configuration eliminated any exterior access for BLAZE, INC. rendering the site unusable as a nightclub or restaurant open beyond the mall's operating hours.

21. Plaintiffs are informed and believe that between 2006 and the time BLAZE, INC. signed its Lease, VF MALL was negotiating with tenants (existing and potential) to accomplish the Shopping Center expansion.

22. On October 1, 2012, VF MALL contracted with David J. Powers and Associates to do a Phase 1 Environmental Site Assessment for the expansion project. VF MALL's decision to hire Powers and Associates was preceded by internal discussions regarding the project.

23. In May of 2013 VF MALL applied for an amendment to its 2007 site development permit to extend the permits for an additional three years.

24. On June 10, 2013, VF MALL filed for an amendment to its permit to demolish and construct a 6 story parking structure.

25. VF MALL never advised Plaintiffs of its expansion plans. VF MALL never advised Plaintiffs to stop its permit processing and construction which was being undertaken simultaneous to VF MALL's pursuit of its expansion plans.

-9-
**FIRST AMENDED COMPLAINT**

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

26. Plaintiffs reallege and incorporate by reference paragraphs 1 through 25 set forth above.

27. Plaintiffs allege that Defendants, and each of them, have breached the Lease contract in the following ways: (a) claimed a false or incorrect Rental Commencement Date; (b) required the premature payment of rent allegedly owed under the Lease with the threat of eviction; (c) collected and continued to collect rent from Plaintiffs not validly owed under the Lease; (d) claimed that Additional Rent and other charges are owed under the Lease when they are in fact not; (e) served Plaintiffs with numerous false and improper notices to cure to or quit; unreasonably delayed in giving approvals of Plaintiffs' designs and plans; (g) impeding the progress of the construction of the restaurant and lounge; (h) failing and refusing to honor the October, 2011 Release of Group One Construction's Mechanic's Lien; (i) delaying the payment of the Tenant Allowance owed under the Lease and then taking unreasonable or unlawful deductions therefrom; (j) requiring Plaintiffs to defend and indemnify VF MALL for the Group One Construction lawsuit, even though none was owed under the facts and circumstances or terms and conditions of the Lease; (k) threatening eviction of Plaintiffs from the Premises; (l) filing and prosecuting the bogus and improper Unlawful Detainer Action in this Court; (m) violated the covenant of good faith and fair dealing; (n) failed to pay for Plaintiffs' improvements as required by Section 6.04(b) of the Lease; (o) violated Plaintiffs' right to quiet use and enjoyment of the Premises; and (p) other acts or omissions.

28. Plaintiffs have performed all obligations owed by them under the Lease except for those obligations whose performance has been prevented or made impossible.

29. In reliance on the promises and agreements of VF MALL as set forth in the Lease, Plaintiffs incurred expenses in anticipation of performance of the Lease by

VF MALL. Plaintiffs entered into contracts with various professionals to manage different aspects of the design and operation of its restaurant and lounge.

30. As a direct and proximate result of Defendants' breach of contract, Plaintiffs have sustained and continued to sustain very substantial economic damages in an amount that cannot be ascertained at this time. Plaintiffs will amend their Complaint to assert the exact amount of their claimed damages at or prior to trial, but it is not less than this Court's jurisdictional minimum.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION

### (Interference With Prospective Economic Advantage)

31. Plaintiffs reallege and incorporate by reference paragraphs 1 through 30 set forth above.

32. The principals and officers of BLAZE, INC., have a proven track record of successfully operating restaurants and lounges in Santa Clara County. BLAZE, INC., has established relationships with other companies in the restaurant and lounge industry. Plaintiffs have designed and are constructing a top quality, upscale restaurant and lounge that will attract numerous customers at a popular mall in a booming local economy. Plaintiffs justifiably anticipate and will make very substantial profits when they open their restaurant and lounge for business.

33. The conduct of Defendants, particularly VF MALL, as described above, was designed to and/or has wrongfully disrupted and substantially delayed the opening of Plaintiffs' restaurant and lounge and has also caused Plaintiffs to incur very substantial additional costs that they would not have incurred absent the conduct and interference of Defendants, and each of them.

34. As a proximate result of Defendants' conduct, Plaintiffs have suffered significant economic damages in an amount to be proven at trial. Plaintiffs will seek leave to amend their Complaint to insert the exact dollar amount of their damages.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Fraud and Deceit—Suppression of Fact)

35. Plaintiffs reallege and incorporate by reference paragraphs 1 through 34 set forth above.

36. VF MALL has been actively pursuing the expansion of the Shopping Center that would eliminate Plaintiffs' leasehold or a major portion thereof since 2006. VF MALL processed permit amendments, hired consultants, performed site assessments and negotiated leases and relocation agreements for new and existing tenants. VF MALL knew at the time of leasing that Plaintiffs would not be able to remain in the Premises for the term of the Lease.

37. VF MALL never advised Plaintiffs of its intentions regarding expansion. Kurt Utterback of VF MALL induced Plaintiffs to enter into a 10 year Lease with guarantees. Utterback and his successors continued to allow Plaintiffs to expend substantial funds on tenant improvements, fixtures, professional services and other expenses related to constructing and operating Plaintiffs' business on the Premises.

38. The suppression of the fact that VF MALL intended to expand the Shopping Center induced Plaintiffs to lease, guarantee, and to expend substantial monies in furtherance of Plaintiffs' business.

39. Plaintiffs, until summer of 2015, were ignorant of the facts suppressed and not disclosed by VF MALL. If Plaintiffs had been aware of the facts not disclosed by VF MALL, Plaintiffs would neither have leased nor continued to expend funds in reliance on the existing tenancy. Plaintiffs would not have entered into contracts with various entities and individuals to provide services for its future operation.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION

### (Fraud and Deceit—Intentional Misrepresentation)

40. Plaintiffs reallege and incorporate by reference paragraphs 1 through 39 set forth above.

41. VF MALL had ongoing conversations with Plaintiffs and VF MALL continued to misrepresent that Plaintiffs' project was desired by and important to VF MALL. Utterback, General Managers Gavin Farnam, Julie Payne, Adam Kamlet, Matt Ehrie and Operations Managers Jeffrey Helmold and Orlando Burch all continued to represent that BLAZE, INC.'s project as desired and that BLAZE, INC. should continue to move forward with its construction and business development efforts. Throughout 2014 Matt Ehrie of VF MALL required Plaintiffs to submit designs, plans and menus for review and approval even though VF MALL had decided to go forward with the Shopping Center expansion. The original approvals of these items had been accomplished in two months yet the second time it took VF MALL 12 months to grant its approval. Throughout the redesign process, VF MALL's design staff (Javier Malespin and Anne Vahcic) encouraged BLAZE, INC. to continue to expend funds and submit design changes in furtherance of BLAZE, INC.'s tenancy. As late as January, 2015, VF MALL through its counsel Jordan Lavinsky, indicated that a two-year extension of the Lease term would be offered after opening.

42. The representations made by VF MALL and its agents were false and made with the intent to deceive Plaintiffs and to induce Plaintiffs to continue paying rent and to reduce the amount of unamortized payments that VF MALL would ultimately have to pay under Section 6.04(b) of the Lease.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## FIFTH CAUSE OF ACTION

### (Fraud and Deceit—Negligent Misrepresentation)

43. Plaintiffs reallege and incorporate by reference paragraphs 1 through 42 set forth above.

44. When VF MALL and its employees and agents continued to represent that Plaintiffs' leasehold would be honored and Plaintiffs would be able to open the Premises, they had no reasonable ground for believing these representations to be true in that VF MALL had made a decision to expand the Shopping Center and had full knowledge that Plaintiffs' use of the Premises was foreclosed by the expansion.

-13-
**FIRST AMENDED COMPLAINT**

45. VF MALL made these representations with the intention of inducing the Plaintiffs to act in reliance on the representations and continue to pay rent and decreasing the unamortized portion of improvements. Plaintiffs did so rely, to its detriment by expending funds and entering into contracts with service providers.

Wherefore, Plaintiffs pray for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION

**(Unfair Business Practice--Business & Professions Code Section 17200)**

46. Plaintiffs reallege and incorporate by reference paragraphs 1 through 45 set forth above.

47. VF MALL has engaged in unfair business practices by failing to inform lessees of impacted units of VF MALL's expansion plans. VF MALL's representation that spaces were available for lease for up to 10 years without disclosing the fact that its planned expansion would preclude a 10 year tenancy misled the tenants.

Withholding the material information regarding its expansion was intended to mislead potential tenants and induce tenants to enter into leases that would not otherwise have been entered into.

48. VF Mall intentionally withheld this information from potential tenants on southside of its building so that it could collect additional rent while it finalized its plans and sough regulatory approvals. This scheme is an unfair business practice.

49. Members of the public are likely to be deceived by VF MALL's scheme and Plaintiffs were actually deceived into leasing and suffered damages from pursuing a business in the leased Premises. Had VF MALL disclosed its intentions, Plaintiffs would not have leased the Premises.

Wherefore, Plaintiffs pray for judgment as follows:

1. For compensatory damages according to proof including but not less than $11,619,995.00 as BLAZE, INC. continues to accrue damages;

2. For exemplary damages based on Defendant's fraud in the inducement of the Lease and ongoing fraudulent conduct.

-14-
**FIRST AMENDED COMPLAINT**

Case: 18-52014 Doc# 78-2 Filed: 07/15/19 Entered: 07/15/19 17:43:19 Page 14 of 15

3. For determination of the value of improvements due pursuant to Section 6.04(b) of the Lease;

4. For attorney fees according to proof in accordance with Section 27.22 of the Lease;

5. For costs of suit herein;

6. For such other and further relief as the Court deems just and proper.

MATTEONI, O'LAUGHLIN & HECHTMAN

Dated: 6/6/2016

By: /s/ Gerald Houlihan
GERALD HOULIHAN
Attorneys for Plaintiffs BLAZE, Inc. and Jacqueline Lopez-Flores

\\moh-us01-fs01\Dnta\Clients\Swenson Bldrs re SCP WOODLAND\pleadings\Revised First Amended Complaint.docx

-15-
**FIRST AMENDED COMPLAINT**