1  HANSON BRIDGETT LLP
   JORDAN A. LAVINSKY, SBN 192215
2  jlavinsky@hansonbridgett.com
   MOHAMMAD WALIZADEH, SBN 233390
3  mwalizadeh@hansonbridgett.com
   DANIEL A. GARCIA, SBN 271677
4  dgarcia@hansonbridgett.com
   425 Market Street, 26th Floor
5  San Francisco, California 94105
   Telephone:    (415) 777-3200
6  Facsimile:    (415) 541-9366

7  Attorneys for Defendant and Cross-Complainant
   VF MALL, LLC

8

9              SUPERIOR COURT OF CALIFORNIA

10                COUNTY OF SANTA CLARA

11

12 BLAZE, INC., a California corporation; and    CASE NO. 115CV280113
   JACQUELINE LOPEZ-FLORES, an
13 individual,                                   **VF MALL, LLC'S CROSS-COMPLAINT
                                                 FOR BREACH OF LEASE AND BREACH
14          Plaintiffs,                          OF GUARANTIES**

15      v.                                       Action Filed:    May 1, 2015

16 VF MALL, LLC, a Delaware limited liability
   company; DOES 1-10, inclusive,
17
            Defendant.
18

19 VF MALL, LLC, a Delaware limited liability
   company,
20
            Cross-Complainant,
21
        v.
22
   BLAZE, INC., a California corporation;
23 JACQUELINE LOPEZ-FLORES, an
   individual; DANA STUBBLEFIELD, an
24 individual; REZA SHARZAND, an
   individual; and ROES 1-10, inclusive,
25
            Cross-Defendants.
26

27

28

| 12360681.1 |                                        -1-
VF MALL, LLC'S CROSS-COMPLAINT FOR BREACH OF LEASE AND BREACH OF GUARANTIES

RECEIVED JUL 1 3 2016




Case: 18-52014    Doc# 78-3    Filed: 07/15/19    Entered: 07/15/19 13:19    Page 1 of 9

Cross-complainant VF MALL, LLC, alleges in this cross-complaint as follows:

## The Parties

1.     VF MALL, LLC ("VF Mall") is a Delaware limited liability company.

2.     BLAZE, INC. ("Blaze") is a California corporation.

3.     JACQUELINE LOPEZ-FLORES ("Lopez-Flores") is an individual.

4.     DANA STUBBLEFIELD ("Stubblefield") is an individual.

5.     REZA SHARZAND ("Sharzand") is an individual.

6.     The true names of cross-defendants ROES 1 through 10, inclusive, are unknown to cross-complainant, who therefore sues said cross-defendants by such fictitious names. Cross-complainant is informed and believes and thereon alleges that each of the cross-defendants designated as a ROE is liable to cross-complainant in some manner under the lease and/or guaranties at issue herein. Cross-complainant will ask leave of Court to allege their true names and capacities when the same have been ascertained.

## The Lease and Guaranties

7.     VF Mall is the owner of Westfield Valley Fair Shopping Center ("Valley Fair") in Santa Clara, California.

8.     On or about September 30, 2010, VF Mall, as landlord, and Blaze, as tenant, entered into a written lease for commercial premises at Valley Fair described as Westfield Valley Fair, 2855 Stevens Creek Boulevard, Store No. A123, Santa Clara, California, 95050 (the "Premises"), and as more particularly described in the lease. A true copy of the lease, as amended (collectively, the "Lease"), is attached as Exhibit A and incorporated by reference.

9.     The Lease allowed for Blaze's "operation of a first class, full service, sit-down restaurant and full bar specializing in fine tapas cuisine." (Exh. A, Lease, §7.01.)

10.     The Lease defines the Rental Commencement Date (i.e., when the obligation to pay rent commences), as well as termination rights based on the non-occurrence of the Rental Commencement Date regardless of fault. Specifically, under Section 1.02 of the Lease, the Latest Rental Commencement Date would be:

...the earlier to occur of (A) the date on which tenant opens its store in the Premises for

VF MALL, LLC'S CROSS-COMPLAINT FOR BREACH OF LEASE AND BREACH OF GUARANTIES

12360681.1

business to the public, or (B) ninety (90) days from issuance to Tenant of all government permits necessary for Tenant to complete Tenant's Work provided however… (i) Tenant must submit Tenant's plans to Landlord for approval within thirty (30) days after the mutual execution of the this Lease…. And (iii) within ten (10) days of Landlord's approval of Tenant's plans, tenant must apply for all government permits. (Exh. A, Lease, Data Sheet §1.02 and Article §1.02.)

11.   Meanwhile, Section 5.04 of the Lease expressly limits how far out the Rental Commencement Date might occur by setting an "Ultimate Rental Commencement Date":

> Notwithstanding anything to the contrary contained herein, **if for any reason whatsoever (including, without limitation, excusable delay), the Rental Commencement Date shall not have commenced prior to such date as shall be two (2) years from the Commencement Date, then this Lease shall be automatically terminated** without further act of either party hereto…" (Exh. A, Lease §5.04, emphasis added.)

12.   The Lease execution date was September 30, 2010, which the Lease also defines as the "Commencement Date" under Section 1.02. The Ultimate Rental Commencement Date was September 30, 2012, based on the Lease Commencement Date of September 30, 2010.

13.   Section 7.02(a) of the Lease provides that "Tenant agrees to be open for business and to operate in all of the Premises during the entire term following the Rental Commencement Date…" (Exh. A, Lease §7.02(a).)

14.   Section 1.03 of the Lease provides for Late Opening Fees, as follows:

> In the event Tenant shall fail to open its store for business within 15 days after the Rental Commencement Date, the parties agree that it is and will be impracticable and extremely difficult to determine the actual damages suffered by Landlord. Therefore the parties have agreed that in order to compensate Landlord for its loss, Tenant shall pay to Landlord as Additional Rent, upon demand, the sum of Two Hundred and Fifty Dollars ($250.00) per day for each day Tenant delays its initial opening in accordance with section 1.02…" (Exh. A, Lease §1.03.)

15.   From the moment Blaze entered into the Lease, Blaze provided and consented to VF Mall's right to terminate the Lease in the event VF Mall elected to expand or renovate Valley Fair, in a manner that VF Mall in its sole judgment believed was desirable to obtain possession of the Premises. (Exh. A, Lease §6.04(b).) In the event of such termination, Blaze would have thirty days to vacate the Premises, pay all rents and perform all other accrued obligations through the effective date of such termination, VF Mall would pay Blaze a sum equal to the then unamortized cost of leasehold improvements paid by Blaze, exclusive of any construction allowance paid to

12360681.1

1  Blaze and the value of any construction chargebacks waived by VF Mall, such amortization to be

2  determined with reference to Blaze's federal income tax returns. Blaze is also required to furnish

3  to VF Mall any information VF Mall may reasonably require with determination of such costs.

4  Indeed, Blaze's counsel specifically negotiated this provision of the Lease, and Blaze ultimately

5  agreed to it.

6      16.    Pursuant to §7.02 of the Lease, Blaze's was required to operate from 10:00 a.m. to

7  9:00 p.m. The Lease permitted Blaze to open as early as 6:00 a.m. and close as late as 2:00 a.m.

8      17.    The Lease was first amended on November 22, 2010, just two months after the

9  Lease was signed, to permit Blaze's to extend its hours of operation from 2 a.m. to 3 a.m. (Exh. A,

10  Lease Amend. No. 1.) The Lease otherwise remained in full force and effect. The Lease was

11  amended again on April 25, 2012, to allow Blaze to "feature" entertainment, amend Blaze's trade

12  name, and to release and add guarantors of the Lease. (Exh. A, Lease Amend. No. 2.) Lease

13  Amendment No. 2 did not otherwise amend the Lease. On August 2, 2012, the Lease was

14  amended a third time to provide for the payment of the Tenant Allowance to Blaze in two

15  installments (the first payment upon completion of 50% of the tenant improvements), rather than

16  one payment upon final completion of the tenant improvements, and to change the late opening fee

17  from $250 to $500 for each day Blaze failed to open for business as required (Exh. A, Lease

18  Amend. No. 3.) Each lease amendment expressly provides: "Except as amended herein, the Lease

19  between the parties shall remain in full force and effect."

20      18.    Lopez-Flores signed a Guaranty of the Lease on or about September 30, 2010, in

21  connection with the Lease, and then again on or about April 25, 2012, in connection with Lease

22  Amendment No. 2 (the "Lopez-Flores Guaranty"). A true copy of the Lopez-Flores Guaranty was

23  attached to the Lease, and is attached (with identifiers redacted per California Rules of Court) as

24  Exhibit B of this complaint and incorporated by reference.

25      19.    On or April 24, 2012, Stubblefield signed a Guaranty of the Lease ("Stubblefield

26  Guaranty"). A true copy of the Stubblefield Guaranty was attached to Lease Amend. No. 2, and is

27  attached as Exhibit C of this complaint and incorporated by reference.

28      20.    On or about April 25, 2012, Sharzand signed a Guaranty of the Lease ("Sharzand

-4-

VF MALL, LLC'S CROSS-COMPLAINT FOR BREACH OF LEASE AND BREACH OF GUARANTIES

Guaranty"). A true copy of the Sharzand Guaranty was attached to Lease Amend. No. 2, and is attached as Exhibit D of this complaint and incorporated by reference.

21. In each of these Guaranties, Lopez-Flores, Stubblefield and Sharzand jointly and severally guaranteed the full, faithful and timely payment and performance of all of Blaze's payments, covenants and obligations under the Lease (*see* Exhs. B – D).

<b><u>General Factual Allegations</u></b>

22. Blaze took possession of the Premises on or about October 1, 2010.

23. On or about January 6, 2011, VF Mall approved the tenant plans for the construction of the Premises as submitted by Blaze. On December 8, 2011, the City of San Jose issued a building, electrical, mechanical, and plumbing permit for Blaze. Ninety days from that permit issuance date was March 7, 2012, thus becoming the Rental Commencement Date under Section 1.02 of the Lease.

24. In March of 2012, VF Mall started charging Blaze for Rent on a monthly basis. VF Mall sent an initial rent invoice to Blaze on or about May 16, 2012, which included the March 2012 Rent. Blaze paid that amount and continued to pay rent for the next two and a half years, while remaining in possession of the Premises.

25. Despite being in possession of the Premises for almost five years, Blaze did not open the Premises to the public or operate. Blaze's construction of the Premises was riddled with Blaze's own delay, negligence and inaction. Blaze constantly changed its own design and internal plans and engaged in in-fighting with its contractors. Blaze also failed to pay its contractors for work provided, causing a mechanic's lien to be recorded and a foreclosure action to proceed against VF Mall's property, in direct violation of the Lease.

26. VF Mall was not obligated to pay the first installment of Tenant Allowance until after Blaze certified completion of 50% of Tenant's Work in the Premises and after receipt of a written application, including unconditional lien waivers, and IRS Form W-9. VF Mall paid the first installment of Tenant Allowance once Blaze properly removed the mechanic's lien from the property, applied for the Tenant Allowance and provided the required documentation. Blaze did not submit a complete application until about December 10, 2013 and Blaze did not confirm the

Case: 18-52014    Doc# 78-3    Filed: 07/15/19    Entered: 07/15/19 17:43:19    Page 5 of
9

desired allocation of funds until December 31, 2013. Accordingly, VF Mall issued the first Tenant Allowance to Blaze on or about January 31, 2014 in the total amount of $175,000, which, pursuant to Blaze's specific instructions, included deductions for past due rent.

27. Throughout Blaze's on-going delay to construct the Premises and open its business, Blaze continued to pay rent. In fact, Blaze paid VF Mall over $700,000 in rent after the March 7, 2012 Rental Commencement Date.

28. The March 7, 2012 Rental Commencement Date and Blaze's payment of rent is of critical importance because the Lease would have automatically terminated under Section 5.04 if the Rental Commencement Date had not occurred by September 30, 2012 (two years after the lease execution date). But since the Rental Commencement Date did occur and Blaze paid rent before September 30, 2012, the Lease did not terminate on the Ultimate Rental Commencement Date and Blaze remained in possession.

29. Almost five years after Blaze took possession of the Premises in October 2010, it had failed to open and operate its Premises. Under Section 1.03 of the Lease, based on the March 7, 2012 Rental Commencement Date, Blaze was liable for a $250 (later increased to $500) per day late fee, as Additional Rent, if it did not open its store for business on March 22, 2012 (March 7 + 15 days = March 22). Blaze did not open for business in the Premises by that date.

30. Meanwhile, despite having paid Rent for years, Blaze failed to pay the rent and charges due under the Lease in the total sum of $70,524.78 beginning in November 2014 and continuing through January 2015.

31. As a result of Blaze's delinquencies, and following repeated broken promises related to its anticipated opening for business, and refusal to commit to an opening date, on or about November 5, 2014, VF Mall served Blaze with a Twenty Day Notice to Cure or Quit based on Blaze's failure to open ("11/4/14 Notice to Cure"). Blaze failed to open its business within this cure period. A true copy of the 11/4/14 Notice to Cure is attached to this complaint as Exhibit E and incorporated by reference.

32. On or about November 4, 2014, VF Mall served Blaze with a Demand for Payment of Late Opening Fees (the "11/4/14 Demand") in the amount of $250 per day (even though the

12360681.1

1 | Lease provided for a $500 per day fee) for each day that Blaze had not opened from May 24, 2013
2 | through the date of the 11/4/14 Demand, for the total sum of $131,000. A true copy of the 11/4/14
3 | Demand is attached to this complaint as Exhibit F and incorporated by reference.

4 |     33.    Blaze failed to make any payment in response to the 11/4/14 Demand. Thus, on or
5 | about December 18, 2014, VF Mall served Blaze with a written Five-Day Notice to Pay Rent or
6 | Quit (the "12/18/14 Notice") concerning that breach. Blaze failed to cure this 12/18/14 Notice
7 | within the cure period. A true copy of the 12/18/14 Notice is attached to this complaint as Exhibit
8 | G and incorporated by reference.

9 |     34.    On or about January 26, 2015, VF Mall served a Five-Day Notice to Pay Rent or
10 | Quit for the Rent due from November 2014 through January 2015 in the sum of $70,524.78 (the
11 | "1/26/15 Notice"). Blaze failed to make any payment within this cure period. A true copy of the
12 | 1/26/15 Notice is attached to this complaint as Exhibit H and incorporated by reference.

13 |     35.    Because Blaze failed to make any payment or open for business in the Premises
14 | within the cure periods for each of the three independent default notices, VF Mall filed an
15 | Unlawful Detainer action against Blaze on February 3, 2015. On May 6, 2015, as a pure delay
16 | tactic, Blaze filed a separate civil lawsuit against VF Mall, seeking declaratory relief on the issues
17 | in the Unlawful Detainer, claiming that the rental commencement date never occurred and that VF
18 | Mall caused damages to Blaze.[1] Blaze then filed a Motion to Consolidate the two actions.

19 |     36.    On August 14, 2015, Blaze, Flores-Lopez and VF Mall participated in a mediation
20 | at JAMS, with the Honorable Judge Silver (Ret.). The parties entered into a written Memorandum
21 | of Understanding (the "MOU"), whereby Blaze agreed, without prejudice to VF Mall's claims in
22 | the Unlawful Detainer, to surrender possession of the Premises by September 14, 2015 pursuant to
23 | Section 6.04(b) of the Lease, which provides Landlord the right to terminate the Lease in the event
24 | of any expansion or renovations of Valley Fair.

25 |
26 | [1] Blaze filed its complaint claiming Rental Commencement Date never occurred 84 days after the unlawful detainer, 491 days after Blaze's allocation instructions on the first Tenant Allowance,
27 | 1,155 days after the March 7, 2012 Rental Commencement Date and after paying over $700,000 in rent.
28 |

12360681.1

VF MALL, LLC'S CROSS-COMPLAINT FOR BREACH OF LEASE AND BREACH OF GUARANTIES

Case: 18-52014    Doc# 78-3    Filed: 07/15/19    Entered: 07/15/19 17:43:19    Page 7 of 9

1    37.    VF Mall is informed and believes, and thereon alleges, that Blaze conducted further

2    construction or development of the Premises after the August 14, 2015 settlement agreement.

3    38.    On or about September 14, 2015, VF Mall vacated the Premises pursuant to Section

4    6.04(b) of the Lease.

### FIRST CAUSE OF ACTION
(Breach of Lease)
(Against BLAZE and ROES 1-5)

7    39.    VF Mall realleges and incorporates by reference the allegations in paragraphs 1

8    through 38, above, as if fully set forth herein.

9    40.    Prior to the filing of this complaint, cross-defendants went into possession of the

10   Premises.

11   41.    VF Mall performed all duties, promises, and obligations required of it and all

12   conditions precedent that VF Mall agreed to perform under the Lease, except where VF Mall's

13   performance was prevented, delayed or excused by cross-defendants.

14   42.    Cross-Defendants breached the Lease by failing to open and operate its Premises,

15   and pay rent and additional charges owed under the Lease. VF Mall served Blaze with the 11/4/14

16   Notice to Cure or Quit based on Blaze' failure to open and operate (*see* Exh. E.) VF Mall also

17   served Blaze with the 12/18/14 Notice to Pay or Quit for Late Opening Fees, and the 1/26/15

18   Notice to Pay or Quit for rent owed (see Exhs. G – H). Cross-Defendants failed to cure each and

19   every one of these default notices, by failing to make any payment or open for business in the

20   Premises within the cure periods for each default notice.

21   43.    As a result of cross-defendants' breach, VF Mall has sustained damages in an

22   amount not less than the amount of $532,147.31, which includes but is not limited to (a) past due

23   rent from November 2014 through January 2015 [$70,524.78]; (b) daily rental damages from

24   February through August 13, 2015 [$155,622.53]; (c) Late Opening charges [$131,000], and (d)

25   the unamortized Tenant Allowance first installment payment [$175,000], with interest upon the

26   full amount, thereon, plus attorneys' fees and costs. As a further result of cross-defendants' breach,

27   Blaze is not entitled to any reimbursement or claim under Section 6.04(b) of the Lease.

28

Case: 18-52014    Doc# 78-3    Filed: 07/15/19    Entered: 07/15/19 17:43:19    Page 8 of 9

**SECOND CAUSE OF ACTION**
**(Breach of Guaranties)**
**(Against JACQUELINE LOPEZ-FLORES, DANA STUBBLEFIELD, REZA SHARZAND and ROES 6-10)**

44.     VF Mall realleges and incorporates by reference the allegations in paragraphs 1 through 43, above, as if fully set forth herein.

45.     In connection with the Lease, Lopez-Flores, Stubblefield and Sharzand executed and delivered to VF Mall the Guaranties, in which they jointly and severally guaranteed the full, faithful and timely payment and performance of all of Blaze's payments, covenants and obligations under the Lease (*See* Exhibits B - D).

46.     Cross-Defendants breached the Guaranties by neglecting and refusing to pay the amounts due and owing to VF Mall under the Lease.

47.     As a result of cross-defendants' breach, VF Mall has sustained damages in an amount not less than the amount of $532,147.31, with interest upon the full amount, thereon, plus attorneys' fees and costs.

WHEREFORE, VF MALL, LLC, prays for judgment against cross-defendants, jointly and severally, as follows:

1.     For damages for breach of Lease and Guaranties in the sum of $532,147.31, with interest thereon;

2.     For attorney's fees and costs under Section 27.22 of the Lease; and

3.     For any other relief that this Court deems appropriate.

Dated: July 11, 2016                          HANSON BRIDGETT LLP

By:_____
MOHAMMAD WALIZADEH
Attorneys for Defendant and Cross-Complainant
VF MALL. LLC

VF MALL, LLC'S CROSS-COMPLAINT FOR BREACH OF LEASE AND BREACH OF GUARANTIES

12360681 1

Case: 18-52014    Doc# 78-3    Filed: 07/15/19    Entered: 07/15/19 17:43:19    Page 9 of 9