EXHIBIT A

Prepared by: LORETTA J. BONANDER

# ADJUSTABLE RATE NOTE
## (MTA - Twelve Month Average Index - Payment Caps)

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT STATED IN THIS NOTE.**

MAY 25, 2006          SAN JOSE          CALIFORNIA
[Date]          [City]          [State]

7076 KINDRA HILL DRIVE, SAN JOSE, CA 95120
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 1,750,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under the terms of this Note but will never exceed 115 percent of the Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is COUNTRYWIDE HOME LOANS, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of this Note, I will pay interest at a yearly rate of 7.750 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of 2.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the first day of SEPTEMBER, 2006 , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates

(H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(D)  Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE & 80/100                         percentage point(s)     3.800 ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than     9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

**3.    PAYMENTS**

**(A)  Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the first                  day of each month beginning on JULY 01, 2006        . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to Interest before Principal. If, on    JUNE 01, 2036              , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at P.O. Box 10219, Van Nuys, CA 91410-0219 or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $6,914.62              , unless adjusted under Section 3(F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the first                  day of JULY, 2007           , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than     7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number    1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 3 of 78

in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN          percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**
On the tenth          Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**
After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:
(i)    **Interest Only Payment:**  the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
(ii)    **Amortized Payment:**  the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
(iii)    **15 Year Amortized Payment:**  the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.
These Payment Options are only applicable if they are greater than the Minimum Payment.

**4.    NOTICE OF CHANGES**
The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.
I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**
If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me

● **PayOption ARM Note - MTA Index**

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 4 of 78

that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any Minimum Payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of the Minimum Payment. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each Minimum Payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the Minimum Payment by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

## 10. WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. SECURED NOTE
In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:
Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 5 of 78

for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Saul Roberto Flores_ _(signature)_

_____
SAUL ROBERTO FLORES                                           - Borrower

_____
                                                              - Borrower

_____
                                                              - Borrower

_____
                                                              - Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

BY: _Michele Sjolander_ _(signature)_

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 6 of 78

EXHIBIT B

Recording Requested By:
A. SHEA

Financial Title

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

████ DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423

Prepared By:
LORETTA J. BONANDER

[Space Above This Line For Recording Data]

**DOCUMENT: 18955320**

| | Pages: | 23 |
|---|---|---|
| Fees.... | | 75.00 |
| Taxes... | | |
| Copies.. | | |
| AMT PAID | | 75.00 |

BRENDA DAVIS
SANTA CLARA COUNTY RECORDER
Recorded at the request of
Financial Title Company

RDE # 007
5/31/2006
8:00 AM

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated MAY 25, 2006 , together with all Riders to this document.

**(B) "Borrower"** is
SAUL ROBERTO FLORES, AND JACQUELINE LOPEZ FLORES, HUSBAND AND WIFE

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

CONV/VA

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 8 of 78

Borrower's address is
654 WILLIS AVENUE, SAN JOSE, CA 95125
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
RECONTRUST COMPANY, N.A.
MSN TO-02 225 WEST HILLCREST DRIVE, THOUSAND OAKS, CA 91360
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  MAY 25, 2006          . The
Note states that Borrower owes Lender
ONE MILLION SEVEN HUNDRED FIFTY THOUSAND and 00/100

Dollars (U.S. $ 1,750,000.00      ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than   JUNE 01, 2036
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of SANTA CLARA :

        [Type of Recording Jurisdiction]                   [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 701-68-013                which currently has the address of
                7076 KINDRA HILL DRIVE, SAN JOSE               ,
                             [Street/City]

California    95120     ("Property Address"):
       [Zip Code]

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 10 of 78

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Case: 18-52014   Doc# 111-4   Filed: 12/04/19   Entered: 12/04/19 16:03:20   Page 11 of 78

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Case: 18-52014   Doc# 111-4   Filed: 12/04/19   Entered: 12/04/19 16:03:20   Page 12 of 78

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Case: 18-52014     Doc# 111-4     Filed: 12/04/19     Entered: 12/04/19 16:03:20     Page 14 of 78

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 16 of 78

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16;03:20    Page 18 of 78

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 20 of 78

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 21 of 78

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
SAUL ROBERTO FLORES                    -Borrower

_____ (Seal)
JACQUELINE LOPEZ FLORES               -Borrower

_____ (Seal)
                                                        -Borrower

_____ (Seal)
                                                        -Borrower

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 22 of 78

State of California
County of Santa Clara } ss.

On 5-2-06 before me, Lori J. Collison, a Notary Public, personally appeared

Saul Roberto Flores
Jacqueline Lopez Flores

_____, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

LORI J. CALLISON
Comm. # 1522339
NOTARY PUBLIC-CALIFORNIA
Santa Clara County
My Comm. Expires Oct. 28, 2008

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 23 of 78

# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)



THIS ADJUSTABLE RATE RIDER is made this  TWENTY-FIFTH       day of
MAY, 2006              , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

7076 KINDRA HILL DRIVE
SAN JOSE, CA 95120
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   The Note provides for changes in the interest rate and the monthly payments, as follows:

• **PayOption MTA ARM Rider**

Page 1 of 6

## 2. INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Up until the first day of the calendar month that immediately precedes the first monthly payment due date set forth in Section 3 of the Note, I will pay interest at a yearly rate of          7.750 %. Additional days interest collected prior to the first monthly payment due date is sometimes called "Per Diem" interest and is due at the time I close my loan. Thereafter until the first Interest Rate Change Date, defined below in Section 2(B), I will pay interest at a yearly rate of          2.500 %. This rate is sometimes referred to as the "Start Rate" and is used to calculate the initial monthly payment described in Section 3. The interest rate required by this Section 2 of the Note is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates

The interest rate I will pay may change on the $first$          day of SEPTEMBER, 2006          , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index

Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding          THREE & 80/100  percentage point(s) (     3.800 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than          9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month.

• **PayOption MTA ARM Rider**

Page 2 of 6

I will make my monthly payments on the FIRST day of each month beginning on July, 2006 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JUNE 01, 2036 , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $ 6,914.62 , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the first day of JULY, 2007 , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.500% of my prior monthly payment. This 7.500% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075 . The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment.

• PayOption MTA ARM Rider                    Page 3 of 6

**(E) Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my Minimum Payment would cause me to exceed that limit, I will instead pay a new Minimum Payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**

On the tenth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." The Payment Options are calculated using the new interest rate in accordance with Section 2(D). I may be given the following Payment Options:

(i) **Interest Only Payment:** the amount that would pay the interest portion of the monthly payment. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.

(ii) **Amortized Payment:** the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

• PayOption MTA ARM Rider

Page 4 of 6

(iii) **15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

• PayOption MTA ARM Rider

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Saul Roberto Flores_

_____   -Borrower
SAUL ROBERTO FLORES

_Jacqueline Lopez Flores_

_____   -Borrower
JACQUELINE LOPEZ FLORES

_____   -Borrower

_____   -Borrower

• PayOption MTA ARM Rider                    Page 6 of 6



Exhibit A

**LEGAL DESCRIPTION**

**The land referred to in this Report is described as follows:**

All that certain real property situated in the City of San Jose, County of Santa Clara, State of California, described as follows:

Lot 19, as designated upon that certain Map entitled" TRACT NO. 8137, filed for record in the office of the Recorder of Santa Clara, State of California, on August 3, 1988 in Book 589, Pages 31 and 32.

EXCEPTING THEREFROM the underground water or rights without right of surface entry, as conveyed to San Jose Water Company, a California corporation, by Deed recorded September 1, 1988 in Book K666, Official Records, Page 878.

**ARB: None**

EXHIBIT C

Recording Requested By:
**Bank of America**
Prepared By: Aida Duenas
450 E. Boundary St.
Chapin, SC 29036
888-603-9011
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

DOCUMENT: 21173949      Pages 2

| Fees | 21 00 |
|---|---|
| Taxes | |
| Copies | |
| AMT PAID | 21 00 |

REGINA ALCOMENDRAS     RDE # 024
SANTA CLARA COUNTY RECORDER     5/12/2011
Recorded at the request of     11:43 AM
Bank

Property Address:
**7076 KINDRA HILL DRIVE**
**San Jose, CA 95120**

MIN #      This space for Recorder's use      MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF THE CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10** whose address is **101 BARCLAY ST - 4W, NEW YORK ,NY 10286** all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

| | |
|---|---|
| Original Lender: | **COUNTRYWIDE HOME LOANS, INC.** |
| Original Borrower(s): | **SAUL ROBERTO FLORES, AND JACQUELINE LOPEZ FLORES, HUSBAND AND WIFE** |
| Original Trustee: | **RECONTRUST COMPANY, N.A.** |
| Date of Deed of Trust: | **5/25/2006** |
| Original Loan Amount: | **$1,750,000.00** |

Recorded in Santa Clara County, CA on: 5/31/2006, book N/A, page N/A and instrument number 18955320

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
5/4/11

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: *Swarupa Slee*

**Swarupa Slee, Assistant Secretary**

State of California
County of Ventura

On _May 4, 2011_ before me, Mary J. Burger, Notary Public, personally appeared Swarupa Slee, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

_Mary J Burger_
_____          (Seal)
Notary Public: Mary J. Burger
My Commission Expires: 9/29/2013

> MARY J. BURGER
> Commission # 1863487
> Notary Public - California
> Los Angeles County
> My Comm. Expires Sep 29, 2013

_Attached: assignment of Deed of Trust_
_Borr: Saul Flores, Jacqueline Flores_

EXHIBIT D

RECORDING REQUESTED BY:
BAC Home Loans Servicing, LP
Attn: Home Retention Division
7105 Corporate Drive
(PTX-B-36)
Plano, TX 75024

-----SPACE ABOVE THIS LINE FOR RECORDER'S USE-----

# LOAN MODIFICATION AGREEMENT
## (5-1 ARM 10 Year IO)

This Loan Modification Agreement ("Agreement"), made this 29th day of August, 2009, between SAUL ROBERTO FLORES (the "Borrower(s)") and BAC Home Loans Servicing, LP (the "Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument"), dated the 25th day of May, 2006 and (2) the Note and Adjustable Rate Rider secured by the Security Instrument, and  (3) any prior agreements or modifications in effect relative to the Note and Security Instrument which covers the real property described in the Security Instrument and defined therein as the 'Property', located at 7076 KINDRA HILL DRIVE , SAN JOSE, CA 95120.

The real property described being set forth as follows:

## SAME AS IN SAID SECURITY INSTRUMENT, SEE ATTACHED EXHIBIT A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1. As of the 1st day of October, 2009, the amount payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $1,944,843.25, consisting of the amount(s) loaned to the Borrower by the Lender and which may include, but are not limited to, any past due principal payments, interest , fees and/or costs ("Unpaid Amounts") which you agreed are to be capitalized (added to the amount you originally borrowed) as one of the terms of this agreement.

2. (a.) Monthly Payments During the Interest-Only Period, Interest Rate Change Dates, and Payments After the Interest-Only Period Ends:

    (i) Interest:
    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.  Each date on which Borrower's interest rate could change is called an "Interest Rate Change Date".  Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.875% from the 1st day of October, 2009 to the September 30, 2014. Interest will be charged on the basis of a twelve-month year and a thirty-day month. The new rate of interest will become effective on each Interest Rate Change Date and Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Interest Rate Change Date until the amount of Borrower's monthly payment changes again. The First Interest Rate Change Date is 1st day of October, 2014 and the adjustable interest rate Borrower will pay may change on that day every twelfth month thereafter.  Borrower's new adjustable interest rate will be determined by applying the Margin, Index, and rate change calculation method provided in the Note.

    (ii) Payments:
    The date on which Borrower will be required to make a first payment consisting of both principal and interest ("First Principal and Interest Payment Due Date") shall be the first monthly payment due on the 1st day of October, 2019. Until the First Principal and Interest Payment Due Date Borrower promises to make monthly payments of interest (Interest Only Payment) of U.S. $10,715.20 beginning on the 1st day of November, 2009, and continuing thereafter on the same day of each succeeding month (Interest-Only Period).  On and after the First Principal and Interest Payment Due Date, and until principal and interest are paid in full, Borrower shall make monthly payments of principal and interest and other charges described in the Note and Security Instrument.  If on the 1st day of June, 2036 (the "Maturity Date"), the Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity Date.

    (b.) Impact of this Agreement on the new Interest-Only Payment and on the Amount of Interest Borrower will pay over the life of the loan;

    Borrower understands that by agreeing to add the unpaid past-due payments, including unpaid and deferred interest, fees, and other costs (collectively 'Unpaid Amounts') to the Unpaid Principal Balance, the added Unpaid Amounts accrue interest based on the interest rate in effect .Borrower also understands that this means interest will now accrue on the unpaid interest , and that this would not happen without this Agreement.

    Borrower understands the result of this Agreement is to increase the amount of interest that will be owed over the term of the loan.  The Interest-Only payment amount Borrower owes now may therefore be higher unless the interest rate has been lowered.  This is because the amount of principal is higher and the interest due is recalculated because it is charged on that higher principal amount.

    (c.) Impact of this Agreement on Monthly Payments at the End of the Interest-Only Period -- the First Principal and Interest Payment Due Date:

    After the Interest-Only Period ends, Borrower understands the monthly payment will increase—even if Borrower's interest rate stays the same—because Borrower must start repaying the principal, as well as the interest, for the remainder of the loan term. Because this Agreement results in the Unpaid Amounts Due being added to principal, the amount of principal that is due with each monthly payment will also increase, which results in a bigger monthly

payment. Borrower also understands the need to plan for this increase in the amount of the monthly payment when the Interest-Only Period ends and that at that time Borrower will no longer have the choice of paying only the Interest-Only monthly amount. Borrower understands that the increase in the monthly payment amount at the First Principal and Interest Payment Due Date could be significant and result in a condition referred to as payment shock.

(d.) Understanding the Monthly Statement during the Interest-Only Period

Borrower understands that the Interest-Only Loan Monthly Statement during the Interest-Only Period has added features to offer more than the Interest Only Payment. Although Borrower's Interest-Only loan offers the freedom to pay only the interest portion of the payment due each month for a specified period of time, Borrower also understands he or she has the choice to pay other amounts, which will assist Borrower in paying down the principal balance. If Borrower chooses to pay extra money beyond the Interest-Only payment amount in a given month, Borrower understands this will reduce the principal owed. The next month, the Interest-Only payment amount Borrower owes (assuming there has been no change in the interest rate on Borrower's loan) will be lower. This is because the amount of principal is lower and the interest due is recalculated because it is charged on that lower principal amount. Borrower understands that paying more and reducing principal can also mean that Borrower will build equity in the home more quickly. Borrower understands that the Amortized Payment Choice and 15-Year Amortized Payment Choice in the Interest-Only monthly statement provide Borrower with several easy ways each month to select a payment that reduces Borrower's principal.

3.  The Borrower will make such payments at Payment Processing  PO Box 10219  Van Nuys, CA 91410 or at such other place as the Lender may require.

4.  Nothing in this agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all terms and provisions thereof, as amended by this Agreement.

5.  In consideration of this Modification, Borrower agrees that if any document related to the Security Instrument, Note and/or Modification is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, Borrower(s) will comply with Lender's request to execute, acknowledge, initial and deliver to Lender any documentation Lender deems necessary. If the original promissory note is replaced the Lender hereby indemnifies the Borrower(s) against any loss associated with a demand on the original note. All documents Lender requests of Borrower(s) shall be referred to as "Documents" Borrower agrees to deliver the Documents within ten (10) days after receipt by Borrower(s) of a written request for such replacement.

As evidenced by their signatures below, the Borrower and the Lender agree to the foregoing.

_Saul Roberto Flores_  Dated: _9-16-09_
SAUL ROBERTO FLORES

STATE OF _____

COUNTY OF _____

On_____ before me, _____Notary Public, personally appeared

_____

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature

BAC Home Loans Servicing, LP

By: _____          Dated: _____

_____                    _____

STATE OF _____

COUNTY OF _____

On _____ before me, _____ Notary Public, personally appeared

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signatures (s) on the instrument the person(s), or entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature

## CALIFORNIA NOTARY ACKNOWLEDGMENT
### (For use by California Notary, if applicable.)

STATE OF CALIFORNIA
COUNTY OF _SANTA CLARA_

On _SEPT. 16, 2009_ before me, _M. DeMARQUEZ , NOTARY PUBLIC_
<span style="text-align:center">(insert name and title of the officer)</span>

personally appeared _— SAUL ROBERTO FLORES —_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _[signature]_

> M. DEMARQUEZ
> Commission #1782784
> Notary Public – California
> Santa Clara County
> My Comm. Exp. Dec. 1, 2011

NOTARY SEAL

THIS CERTIFICATE MUST BE ATTACHED TO THE
DOCUMENT DESCRIBED AT RIGHT

Document: Loan Modification Agreement
Number of Pages: _____
Date of Document: _____
Signer(s) Other Than Named Above: _____



Exhibit A

**LEGAL DESCRIPTION**

**The land referred to in this Report is described as follows:**

All that certain real property situated in the City of San Jose, County of Santa Clara, State of California, described as follows:

Lot 19, as designated upon that certain Map entitled" TRACT NO. 8137, filed for record in the office of the Recorder of Santa Clara, State of California, on August 3, 1988 in Book 589, Pages 31 and 32.

EXCEPTING THEREFROM the underground water or rights without right of surface entry, as conveyed to San Jose Water Company, a California corporation, by Deed recorded September 1, 1988 in Book K666, Official Records, Page 878.

**ARB: None**

EXHIBIT E

Fill in this information to identify your case and this filing:

Debtor 1 **Jacqueline Lopez- Flores**
First Name      Middle Name      Last Name

Debtor 2
(Spouse, if filing)    First Name      Middle Name      Last Name

United States Bankruptcy Court for the: NORTHERN DISTRICT OF CALIFORNIA

Case number **18-52014**

■ Check if this is an amended filing

# Official Form 106A/B
# Schedule A/B: Property                                    12/15

In each category, separately list and describe items. List an asset only once. If an asset fits in more than one category, list the asset in the category where you think it fits best. Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

**Part 1:**   Describe Each Residence, Building, Land, or Other Real Estate You Own or Have an Interest In

1. Do you own or have any legal or equitable interest in any residence, building, land, or similar property?

   ☐ No. Go to Part 2.
   ■ Yes. Where is the property?

1.1

**7076 Kindra Hill Dr.**
Street address, if available, or other description

**San Jose**     **CA**
City      State      ZIP Code

_____
County

**What is the property?** Check all that apply
   ■ Single-family home
   ☐ Duplex or multi-unit building
   ☐ Condominium or cooperative
   ☐ Manufactured or mobile home
   ☐ Land
   ☐ Investment property
   ☐ Timeshare
   ☐ Other _____

**Who has an interest in the property?** Check one
   ☐ Debtor 1 only
   ☐ Debtor 2 only
   ☐ Debtor 1 and Debtor 2 only
   ■ At least one of the debtors and another

Other information you wish to add about this item, such as local property identification number:
**APN 70168013**

Do not deduct secured claims or exemptions. Put the amount of any secured claims on *Schedule D: Creditors Who Have Claims Secured by Property.*

| Current value of the entire property? | Current value of the portion you own? |
|---|---|
| **$3,600,000.00** | **$3,600,000.00** |

Describe the nature of your ownership interest (such as fee simple, tenancy by the entireties, or a life estate), if known.
**Fee simple**

■ Check if this is community property
(see instructions)

2. Add the dollar value of the portion you own for all of your entries from Part 1, including any entries for pages you have attached for Part 1. Write that number here........................................=>

**$3,600,000.00**

**Part 2:**   Describe Your Vehicles

Do you own, lease, or have legal or equitable interest in any vehicles, whether they are registered or not? Include any vehicles you own that someone else drives. If you lease a vehicle, also report it on *Schedule G: Executory Contracts and Unexpired Leases.*

3. Cars, vans, trucks, tractors, sport utility vehicles, motorcycles

   ■ No
   ☐ Yes

**4. Watercraft, aircraft, motor homes, ATVs and other recreational vehicles, other vehicles, and accessories**
   *Examples:* Boats, trailers, motors, personal watercraft, fishing vessels, snowmobiles, motorcycle accessories

■ No
☐ Yes

5  Add the dollar value of the portion you own for all of your entries from Part 2, including any entries for
   pages you have attached for Part 2. Write that number here.............................................................=>

|  | $0.00 |
|---|---|

**Part 3:    Describe Your Personal and Household Items**

| Do you own or have any legal or equitable interest in any of the following items? | Current value of the portion you own? Do not deduct secured claims or exemptions. |
|---|---|

**6. Household goods and furnishings**
   *Examples:* Major appliances, furniture, linens, china, kitchenware
   ☐ No
   ■ Yes. Describe.....

| Personal furniture | $12,000.00 |
|---|---|

**7. Electronics**
   *Examples:* Televisions and radios; audio, video, stereo, and digital equipment; computers, printers, scanners; music collections; electronic devices
   including cell phones, cameras, media players, games
   ☐ No
   ■ Yes. Describe.....

| TV and Stereo Equipment | $1,000.00 |
|---|---|

**8. Collectibles of value**
   *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; stamp, coin, or baseball card collections;
   other collections, memorabilia, collectibles
   ■ No
   ☐ Yes. Describe.....

**9. Equipment for sports and hobbies**
   *Examples:* Sports, photographic, exercise, and other hobby equipment; bicycles, pool tables, golf clubs, skis; canoes and kayaks; carpentry tools;
   musical instruments
   ■ No
   ☐ Yes. Describe.....

**10. Firearms**
   *Examples:* Pistols, rifles, shotguns, ammunition, and related equipment
   ■ No
   ☐ Yes. Describe.....

**11. Clothes**
   *Examples:* Everyday clothes, furs, leather coats, designer wear, shoes, accessories
   ☐ No
   ■ Yes. Describe.....

| Personal clothing | $1,500.00 |
|---|---|

**12. Jewelry**
   *Examples:* Everyday jewelry, costume jewelry, engagement rings, wedding rings, heirloom jewelry, watches, gems, gold, silver
   ☐ No
   ■ Yes. Describe.....

| Personal jewelry | $5,500.00 |
|---|---|

13. **Non-farm animals**
    *Examples:* Dogs, cats, birds, horses
    ■ No
    ☐ Yes.  Describe.....

14. **Any other personal and household items you did not already list, including any health aids you did not list**
    ■ No
    ☐ Yes.  Give specific information.....

15. Add the dollar value of all of your entries from Part 3, including any entries for pages you have attached
    for Part 3. Write that number here ...................................................................   | **$20,000.00** |

| **Part 4:** | **Describe Your Financial Assets** |
|---|---|

| **Do you own or have any legal or equitable interest in any of the following?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

16. **Cash**
    *Examples:* Money you have in your wallet, in your home, in a safe deposit box, and on hand when you file your petition
    ■ No
    ☐ Yes.....................................................................................

17. **Deposits of money**
    *Examples:* Checking, savings, or other financial accounts; certificates of deposit; shares in credit unions, brokerage houses, and other similar
    institutions. If you have multiple accounts with the same institution, list each.
    ☐ No
    ■ Yes........................                          Institution name:

|  | 17.1. | **Chase Bank** | **$300.00** |
|---|---|---|---|

18. **Bonds, mutual funds, or publicly traded stocks**
    *Examples:* Bond funds, investment accounts with brokerage firms, money market accounts
    ■ No
    ☐ Yes..................                   Institution or issuer name:

19. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including an interest in an LLC, partnership, and
    joint venture**
    ☐ No
    ■ Yes.  Give specific information about them..................

| Name of entity: | % of ownership: | | |
|---|---|---|---|
| **Eagle Sales and Development, LLC** | **100%** | % | **Unknown** |
| **Blaze, Inc.** | **50%** | % | **Unknown** |
| **Uno Group Capital Holdings LLC** | **50%** | % | **Unknown** |
| **Iron Springs Development, LLC** | **10%** | % | **Unknown** |

20. **Government and corporate bonds and other negotiable and non-negotiable instruments**
    *Negotiable instruments* include personal checks, cashiers' checks, promissory notes, and money orders.
    *Non-negotiable instruments* are those you cannot transfer to someone by signing or delivering them.
    ■ No
    ☐ Yes. Give specific information about them
                   Issuer name:

**21. Retirement or pension accounts**
  *Examples:* Interests in IRA, ERISA, Keogh, 401(k), 403(b), thrift savings accounts, or other pension or profit-sharing plans
  ■ No
  ☐ Yes. List each account separately.
                          Type of account:                      Institution name:

**22. Security deposits and prepayments**
  Your share of all unused deposits you have made so that you may continue service or use from a company
  *Examples:* Agreements with landlords, prepaid rent, public utilities (electric, gas, water), telecommunications companies, or others
  ■ No
  ☐ Yes. ....................                        Institution name or individual:

**23. Annuities** (A contract for a periodic payment of money to you, either for life or for a number of years)
  ■ No
  ☐ Yes.............        Issuer name and description.

**24. Interests in an education IRA, in an account in a qualified ABLE program, or under a qualified state tuition program.**
  26 U.S.C. §§ 530(b)(1), 529A(b), and 529(b)(1).
  ■ No
  ☐ Yes.............        Institution name and description. Separately file the records of any interests.11 U.S.C. § 521(c):

**25. Trusts, equitable or future interests in property (other than anything listed in line 1), and rights or powers exercisable for your benefit**
  ■ No
  ☐ Yes.  Give specific information about them...

**26. Patents, copyrights, trademarks, trade secrets, and other intellectual property**
  *Examples:* Internet domain names, websites, proceeds from royalties and licensing agreements
  ■ No
  ☐ Yes.  Give specific information about them...

**27. Licenses, franchises, and other general intangibles**
  *Examples:* Building permits, exclusive licenses, cooperative association holdings, liquor licenses, professional licenses
  ☐ No
  ■ Yes.  Give specific information about them...

| California Licensed Real Estate Agent | Unknown |
|---|---|

| **Money or property owed to you?** | **Current value of the portion you own?** Do not deduct secured claims or exemptions. |
|---|---|

**28. Tax refunds owed to you**
  ■ No
  ☐ Yes. Give specific information about them, including whether you already filed the returns and the tax years.......

**29. Family support**
  *Examples:* Past due or lump sum alimony, spousal support, child support, maintenance, divorce settlement, property settlement
  ■ No
  ☐ Yes. Give specific information......

**30. Other amounts someone owes you**
  *Examples:* Unpaid wages, disability insurance payments, disability benefits, sick pay, vacation pay,  workers' compensation, Social Security
          benefits; unpaid loans you made to someone else
  ■ No
  ☐ Yes.  Give specific information..

**31. Interests in insurance policies**
  *Examples:* Health, disability, or life insurance; health savings account (HSA); credit, homeowner's, or renter's insurance
  ■ No
  ☐ Yes. Name the insurance company of each policy and list its value.
          Company name:                          Beneficiary:                          Surrender or refund

value:

32. **Any interest in property that is due you from someone who has died**
     If you are the beneficiary of a living trust, expect proceeds from a life insurance policy, or are currently entitled to receive property because someone has died.
     ■ No
     ☐ Yes.  Give specific information..

33. **Claims against third parties, whether or not you have filed a lawsuit or made a demand for payment**
     *Examples:* Accidents, employment disputes, insurance claims, or rights to sue
     ■ No
     ☐ Yes.  Describe each claim.........

34. **Other contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims**
     ■ No
     ☐ Yes.  Describe each claim.........

35. **Any financial assets you did not already list**
     ■ No
     ☐ Yes.  Give specific information..

36. Add the dollar value of all of your entries from Part 4, including any entries for pages you have attached for Part 4. Write that number here.................................................................................................... | **$300.00** |

| **Part 5:** | Describe Any Business-Related Property You Own or Have an Interest In. List any real estate in Part 1. |

37. **Do you own or have any legal or equitable interest in any business-related property?**
     ■ No. Go to Part 6.
     ☐ Yes.  Go to line 38.

| **Part 6:** | Describe Any Farm- and Commercial Fishing-Related Property You Own or Have an Interest In. |
| | If you own or have an interest in farmland, list it in Part 1. |

46. **Do you own or have any legal or equitable interest in any farm- or commercial fishing-related property?**
     ■ No. Go to Part 7.
     ☐ Yes.  Go to line 47.

| **Part 7:** | Describe All Property You Own or Have an Interest In That You Did Not List Above |

53. **Do you have other property of any kind you did not already list?**
     *Examples:* Season tickets, country club membership
     ■ No
     ☐ Yes. Give specific information.........

54.  Add the dollar value of all of your entries from Part 7. Write that number here  ..................................... | **$0.00** |

| Part 8: | List the Totals of Each Part of this Form | | |
|---|---|---|---|

| | | | |
|---|---|---:|---:|
| 55. | **Part 1: Total real estate, line 2** ........................................................................................ | | $3,600,000.00 |
| 56. | **Part 2: Total vehicles, line 5** | $0.00 | |
| 57. | **Part 3: Total personal and household items, line 15** | $20,000.00 | |
| 58. | **Part 4: Total financial assets, line 36** | $300.00 | |
| 59. | **Part 5: Total business-related property, line 45** | $0.00 | |
| 60. | **Part 6: Total farm- and fishing-related property, line 52** | $0.00 | |
| 61. | **Part 7: Total other property not listed, line 54**                                    + | $0.00 | |
| 62. | **Total personal property.** Add lines 56 through 61... | $20,300.00 | Copy personal property total      $20,300.00 |

63.   **Total of all property on Schedule A/B.** Add line 55 + line 62

$3,620,300.00

Fill in this information to identify your case:

| Debtor 1 | **Jacqueline Lopez- Flores** | | |
|---|---|---|---|
| | First Name | Middle Name | Last Name |
| Debtor 2 | | | |
| (Spouse if, filing) | First Name | Middle Name | Last Name |
| United States Bankruptcy Court for the: | NORTHERN DISTRICT OF CALIFORNIA | | |
| Case number | 18-52014 | | |
| (if known) | | | |

■ Check if this is an amended filing

## Official Form 106D
## Schedule D: Creditors Who Have Claims Secured by Property    12/15

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying correct information. If more space is needed, copy the Additional Page, fill it out, number the entries, and attach it to this form. On the top of any additional pages, write your name and case number (if known).

**1. Do any creditors have claims secured by your property?**

☐ No. Check this box and submit this form to the court with your other schedules. You have nothing else to report on this form.

■ Yes. Fill in all of the information below.

### Part 1:  List All Secured Claims

2. List all secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim. If more than one creditor has a particular claim, list the other creditors in Part 2. As much as possible, list the claims in alphabetical order according to the creditor's name.

| | | Column A<br>Amount of claim<br>Do not deduct the<br>value of collateral. | Column B<br>Value of collateral<br>that supports this<br>claim | Column C<br>Unsecured<br>portion<br>If any |
|---|---|---|---|---|
| **2.1** City of San Jose<br><br>Creditor's Name<br><br>**200 E. Santa Clara St.<br>San Jose, CA 95113**<br>Number, Street, City, State & Zip Code | Describe the property that secures the claim:<br>**7076 Kindra Hill Dr. San Jose, CA<br>APN 70168013**<br><br>As of the date you file, the claim is: Check all that apply.<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | $284.00 | $3,600,000.00 | $0.00 |

**Who owes the debt?** Check one.

☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another

■ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.

☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset)    **Lien**

Date debt was incurred   **10/28/14**     Last 4 digits of account number  _____

| 2.2 | Dan Ryan | Describe the property that secures the claim: | $250,000.00 | $3,600,000.00 | $0.00 |
|---|---|---|---|---|---|

**Dan Ryan**
Creditor's Name

**6531 Gillis Dr.
San Jose, CA 95120**
Number, Street, City, State & Zip Code

**Who owes the debt? Check one.**
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred   **2/17/2009**

Describe the property that secures the claim:
**7076 Kindra Hill Dr. San Jose, CA APN 70168013**

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☑ Other (including a right to offset)   **Deed of Trust**

Last 4 digits of account number

---

| 2.3 | Dan Ryan | Describe the property that secures the claim: | $0.00 | $0.00 | $0.00 |
|---|---|---|---|---|---|

**Dan Ryan**
Creditor's Name

**2131 The Alameda
Ste. A
San Jose, CA 95126**
Number, Street, City, State & Zip Code

**Who owes the debt? Check one.**
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred

Describe the property that secures the claim:
**Notice only.**

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ☐ Other (including a right to offset)

Last 4 digits of account number

---

| 2.4 | Hopkins & Carley | Describe the property that secures the claim: | $148,033.00 | $3,600,000.00 | $145,363.44 |
|---|---|---|---|---|---|

**Hopkins & Carley**
Creditor's Name

**P.O. Box 1469
San Jose, CA 95109**
Number, Street, City, State & Zip Code

**Who owes the debt? Check one.**
- ☑ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a community debt

Date debt was incurred   **8/8/2011**

Describe the property that secures the claim:
**7076 Kindra Hill Dr. San Jose, CA APN 70168013**

As of the date you file, the claim is: Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☑ Judgment lien from a lawsuit
- ☐ Other (including a right to offset)

Last 4 digits of account number

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com                                    Best Case Bankruptcy

| 2.5 | Internal Revenue Service | Describe the property that secures the claim: | $180,309.00 | $3,600,000.00 | $0.00 |
|---|---|---|---|---|---|

**Creditor's Name**

7076 Kindra Hill Dr. San Jose, CA
APN 70168013

P.O. Box 7346
Philadelphia, PA 19101

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☒ Other (including a right to offset)    **Taxes**

Date debt was incurred _____    Last 4 digits of account number _____

---

| 2.6 | Phu Vuong | Describe the property that secures the claim: | $75,000.00 | $3,600,000.00 | $75,000.00 |
|---|---|---|---|---|---|

**Creditor's Name**

7076 Kindra Hill Dr. San Jose, CA
APN 70168013

4104 Carola Ct.
San Jose, CA 95130

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☒ Other (including a right to offset)    **Deed of Trust**

Date debt was incurred **9/25/14**    Last 4 digits of account number _____

---

| 2.7 | Phu Vuong | Describe the property that secures the claim: | $10,000.00 | $3,600,000.00 | $10,000.00 |
|---|---|---|---|---|---|

**Creditor's Name**

7076 Kindra Hill Dr. San Jose, CA
APN 70168013

4104 Carola Ct.
San Jose, CA 95130

Number, Street, City, State & Zip Code

**As of the date you file, the claim is:** Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

**Who owes the debt?** Check one.
☒ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

**Nature of lien.** Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☒ Other (including a right to offset)    **Deed of Trust**

Date debt was incurred **10/29/2015**    Last 4 digits of account number _____

---

Official Form 106D    Additional Page of **Schedule D: Creditors Who Have Claims Secured by Property**    page 3 of 6

| 2.8 | Robert L. Johnson & Moya R. Johnson | Describe the property that secures the claim: | $65,000.00 | $3,600,000.00 | $0.00 |
|---|---|---|---|---|---|

**2.8 Robert L. Johnson & Moya R. Johnson**
Creditor's Name

1960 Story Rd.
San Jose, CA 95122
Number, Street, City, State & Zip Code

Describe the property that secures the claim: **$65,000.00** **$3,600,000.00** **$0.00**

7076 Kindra Hill Dr. San Jose, CA
APN 70168013

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **Deed of Trust**

Date debt was incurred **9/12/2008**     Last 4 digits of account number

---

**2.9 Ropers Majeski et. al.**
Creditor's Name

50 W. San Fernando St.
Ste. 1400
San Jose, CA 95113
Number, Street, City, State & Zip Code

Describe the property that secures the claim: **$40,000.00** **$3,600,000.00** **$0.00**

7076 Kindra Hill Dr. San Jose, CA
APN 70168013

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
■ Disputed

Who owes the debt? Check one.
■ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
☐ At least one of the debtors and another
☐ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
☐ Other (including a right to offset)

Date debt was incurred **4/9/2018**     Last 4 digits of account number

---

**2.10 Santa Clara County Tax Collector**
Creditor's Name

70 W. Hedding St.
San Jose, CA 95110
Number, Street, City, State & Zip Code

Describe the property that secures the claim: **$0.00** **$3,600,000.00** **$0.00**

7076 Kindra Hill Drive
San Jose, California
Single Family Residence
Notice Only

As of the date you file, the claim is: Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Who owes the debt? Check one.
☐ Debtor 1 only
☐ Debtor 2 only
☐ Debtor 1 and Debtor 2 only
■ At least one of the debtors and another
■ Check if this claim relates to a community debt

Nature of lien. Check all that apply.
☐ An agreement you made (such as mortgage or secured car loan)
☐ Statutory lien (such as tax lien, mechanic's lien)
☐ Judgment lien from a lawsuit
■ Other (including a right to offset) **Real Property Taxes**

Date debt was incurred     Last 4 digits of account number

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com     Best Case Bankruptcy

| 2.1 1 | SLS | Describe the property that secures the claim: | $2,967,561.00 | $3,600,000.00 | $0.00 |
|---|---|---|---|---|---|

**Creditor's Name**

8742 Lucent Blvd. #300
Littleton, CO 80129

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ■ At least one of the debtors and another
- ■ Check if this claim relates to a
  community debt

Date debt was incurred   2007

**Describe the property that secures the claim:**

7076 Kindra Hill Dr. San Jose, CA
APN 70168013

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ■ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)   **First Deed of Trust**

Last 4 digits of account number

---

| 2.1 2 | SLS | Describe the property that secures the claim: | $0.00 | $0.00 | $0.00 |
|---|---|---|---|---|---|

**Creditor's Name**

c/o Law Offices of Les
Zieve
30 Corporate Drive Ste.
450
Irvine, CA 92606

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ☐ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ■ At least one of the debtors and another
- ■ Check if this claim relates to a
  community debt

Date debt was incurred

**Describe the property that secures the claim:**

Notice Only

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ☐ Judgment lien from a lawsuit
- ■ Other (including a right to offset)

Last 4 digits of account number

---

| 2.1 3 | United States of America | Describe the property that secures the claim: | $94,176.44 | $3,600,000.00 | $0.00 |
|---|---|---|---|---|---|

**Creditor's Name**

c/o Michael Consentino
P.O. Box 129
Alameda, CA 94501

Number, Street, City, State & Zip Code

**Who owes the debt?** Check one.
- ■ Debtor 1 only
- ☐ Debtor 2 only
- ☐ Debtor 1 and Debtor 2 only
- ☐ At least one of the debtors and another
- ☐ Check if this claim relates to a
  community debt

Date debt was incurred   5/13/2011

**Describe the property that secures the claim:**

7076 Kindra Hill Dr. San Jose, CA
APN 70168013

**As of the date you file, the claim is:** Check all that apply.
- ☐ Contingent
- ☐ Unliquidated
- ☐ Disputed

**Nature of lien.** Check all that apply.
- ☐ An agreement you made (such as mortgage or secured car loan)
- ☐ Statutory lien (such as tax lien, mechanic's lien)
- ■ Judgment lien from a lawsuit
- ☐ Other (including a right to offset)

Last 4 digits of account number

---

Software Copyright (c) 1996-2019 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

Case: 18-52014     Doc# 65     Filed: 05/17/19     Entered: 05/17/19 11:58:10     Page 11 of
13

Case: 18-52014     Doc# 111-4     Filed: 12/04/19     Entered: 12/04/19 16:03:20     Page 51
of 78

| | |
|---|---|
| Add the dollar value of your entries in Column A on this page. Write that number here: | **$3,830,363.44** |
| If this is the last page of your form, add the dollar value totals from all pages. Write that number here: | **$3,830,363.44** |

**Part 2:** List Others to Be Notified for a Debt That You Already Listed

Use this page only if you have others to be notified about your bankruptcy for a debt that you already listed in Part 1. For example, if a collection agency is trying to collect from you for a debt you owe to someone else, list the creditor in Part 1, and then list the collection agency here. Similarly, if you have more than one creditor for any of the debts that you listed in Part 1, list the additional creditors here. If you do not have additional persons to be notified for any debts in Part 1, do not fill out or submit this page.

EXHIBIT F

PlnDue, DebtEd, DsclsDue, DISMISSED, CLOSED

# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Jose)
## Bankruptcy Petition #: 15-51705

|  |  |
|---|---|
| *Date filed:* | 05/19/2015 |
| *Date terminated:* | 01/28/2016 |
| *Debtor dismissed:* | 01/28/2016 |
| *341 meeting:* | 08/05/2015 |
| *Deadline for objecting to discharge:* | 08/24/2015 |

*Assigned to:* Judge Dennis Montali
Chapter 11
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason

*Debtor*
**Saul Roberto Flores**
7076 Kindra Hill Drive
San Jose, CA 95120
SANTA CLARA-CA
SSN / ITIN: xxx-xx-7647
*aka* **Saul R. Flores**

represented by **Charles B. Greene**
Law Offices of Charles B. Greene
84 W Santa Clara St. #800
San Jose, CA 95113
(408) 279-3518
Email: cbgattyecf@aol.com

**Michael E. Stone**
Stone Siegel Law Firm
1726 Seabright Ave.
Santa Cruz, CA 95062
(831)713-5773
Email: mike@stonesiegel.com

*U.S. Trustee*
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

| Filing Date | # | Docket Text |
|---|---|---|
| 05/19/2015 | <u>1</u><br>(24 pgs) | Chapter 11 Voluntary Petition WITH LIST OF CREDITORS HOLDING 20 LARGEST UNSECURED CLAIMS, Fee Amount $1717, Filed by Saul Roberto Flores. Order Meeting of Creditors due by 05/26/2015.Incomplete Filings due by 06/2/2015. (Greene, Charles) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO INCLUDE ADDITIONAL ITEMS FILED. CORRECTIVE ENTRY: COURT MODIFIED SUMMARY OF SCHEDULES TO MATCH PDF. Modified on 5/19/2015 (no). (Entered: 05/19/2015) |
| 05/19/2015 | <u>2</u> | Statement of Social Security Number. Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 05/19/2015) |

| 05/19/2015 | 3<br>(1 pg) | Certificate of Credit Counseling Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 05/19/2015) |
|---|---|---|
| 05/19/2015 | | Receipt of filing fee for Voluntary Petition (Chapter 11)(15-51705) [misc,volp11] (1717.00). Receipt number 24691459, amount $1717.00 (re: Doc# 1 Voluntary Petition (Chapter 11)) (U.S. Treasury) (Entered: 05/19/2015) |
| 05/19/2015 | | First Meeting of Creditors with 341(a) meeting to be held on 06/24/2015 at 09:30 AM at San Jose Room 268. Last Day to Determine Dischargeability of Certain Debts due by 08/24/2015. Proof of Claim due by 09/22/2015. (Greene, Charles) (Entered: 05/19/2015) |
| 05/19/2015 | 4<br>(2 pgs; 2 docs) | Order To File Required Documents and Notice Regarding Dismissal (no) (Entered: 05/19/2015) |
| 05/19/2015 | 5<br>(3 pgs; 2 docs) | Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (no) (Entered: 05/19/2015) |
| 05/20/2015 | 6<br>(2 pgs; 2 docs) | Notice of **Status Conference scheduled for 7/17/2015 at 02:30 PM at San Jose Courtroom 3020 - Weissbrodt.** (no) (Entered: 05/20/2015) |
| 05/20/2015 | 7<br>(3 pgs; 2 docs) | Order for Payment of State and Federal Taxes (admin) (Entered: 05/20/2015) |
| 05/21/2015 | 8<br>(5 pgs; 3 docs) | Application to Employ Charles B. Greene as Attorney for Debtor Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration # 2 Certificate of Service) (Greene, Charles) (Entered: 05/21/2015) |
| 05/21/2015 | 9<br>(3 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 5 Generate 341 Notices). Notice Date 05/21/2015. (Admin.) (Entered: 05/21/2015) |
| 05/21/2015 | 10<br>(2 pgs) | BNC Certificate of Mailing (RE: related document(s) 4 Order to File Missing Documents). Notice Date 05/21/2015. (Admin.) (Entered: 05/21/2015) |
| 05/22/2015 | 11<br>(2 pgs) | BNC Certificate of Mailing - Notice of Status Conference in Ch 11. (RE: related document(s) 6 Notice of Status Conference). Notice Date 05/22/2015. (Admin.) (Entered: 05/22/2015) |
| 05/23/2015 | 12<br>(3 pgs) | BNC Certificate of Mailing - Payment of State and Fed Taxes. (RE: related document(s) 7 Order for Payment of State and Federal Taxes). Notice Date 05/23/2015. (Admin.) (Entered: 05/23/2015) |
| 05/28/2015 | 13 | Order Granting Application to Employ Attorney Charles B. |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 55 of 78

| | | |
|---|---|---|
| | (2 pgs) | Greene for Saul Roberto Flores Added to the Case (Related Doc # 8) (clc) (Entered: 05/28/2015) |
| 06/04/2015 | 14 (2 pgs; 2 docs) | Order to Appear and Show Cause (RE: related document(s)4 Order to File Missing Documents). **Show Cause hearing scheduled for 7/17/2015 at 02:30 PM at San Jose Courtroom 3020 - Weissbrodt.** (clc) (Entered: 06/04/2015) |
| 06/06/2015 | 15 (2 pgs) | BNC Certificate of Mailing - Clerk's Report and Order to Show Cause. (RE: related document(s) 14 Order to Show Cause). Notice Date 06/06/2015. (Admin.) (Entered: 06/06/2015) |
| 06/10/2015 | 16 (3 pgs) | Notice of Appearance and Request for Notice by Stephen J. Kottmeier. Filed by Creditor Hopkins & Carley, ALC (Kottmeier, Stephen) (Entered: 06/10/2015) |
| 06/16/2015 | 17 (6 pgs) | Schedule B , Schedule C , Schedule I Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 06/16/2015) |
| 06/16/2015 | 18 (3 pgs) | Chapter 11 Statement of Current Monthly Income (Form 22B) Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 06/16/2015) |
| 06/16/2015 | 19 (5 pgs) | Amended Schedule A,. , Amended Schedule F . Fee Amount $30., Creditor Matrix Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 06/16/2015) |
| 06/16/2015 | | Receipt of filing fee for Amended Schedules (D, E, and F - Fee Required)(15-51705) [misc,amdsch] ( 30.00). Receipt number 24839615, amount $ 30.00 (re: Doc# 19 Amended Schedules (D, E, and F - Fee Required)) (U.S. Treasury) (Entered: 06/16/2015) |
| 06/19/2015 | 20 (8 pgs; 3 docs) | Application to Employ Michael E. Stone as Special Counsel to Debtor Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration # 2 Exhibit A) (Greene, Charles) (Entered: 06/19/2015) |
| 06/19/2015 | 21 (4 pgs; 2 docs) | Notice of Hearing (RE: related document(s)20 Application to Employ Michael E. Stone as Special Counsel to Debtor Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration # 2 Exhibit A). **Hearing scheduled for 7/9/2015 at 01:15 PM at San Jose Courtroom 3020 - Weissbrodt.** Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 06/19/2015) |
| 06/22/2015 | 22 (3 pgs) | Request for Notice *with Certificate of Service* Filed by Creditor NATIONSTAR MORTGAGE LLC (Clark, Matthew) (Entered: 06/22/2015) |
| 06/22/2015 | 23 | Amended Schedule F . Fee Amount $30. Filed by Debtor Saul |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 56 of 78

| | | |
|---|---|---|
| | (7 pgs) | Roberto Flores (Greene, Charles) (Entered: 06/22/2015) |
| 06/22/2015 | | Receipt of filing fee for Amended Schedules (D, E, and F - Fee Required)(15-51705) [misc,amdsch] ( 30.00). Receipt number 24868868, amount $ 30.00 (re: Doc# 23 Amended Schedules (D, E, and F - Fee Required)) (U.S. Treasury) (Entered: 06/22/2015) |
| 06/24/2015 | 24 (4 pgs; 2 docs) | Notice Regarding *Continued 341 Meeting* (RE: related document(s) First Meeting of Creditors with 341(a) meeting to be held on 06/24/2015 at 09:30 AM at San Jose Room 268. Last Day to Determine Dischargeability of Certain Debts due by 08/24/2015. Proof of Claim due by 09/22/2015., 5 Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (no)). Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 06/24/2015) |
| 06/25/2015 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued *Track # 1, 341 MOC 6/24/15. Meeting continued to 7/22/15 @ 9:30 am. No appearance by Debtor.* 341(a) meeting to be held on 7/22/2015 at 09:30 AM San Jose Room 268 (Hsu, Shining) (Entered: 06/25/2015) |
| 07/01/2015 | 25 (2 pgs; 2 docs) | Judge Dennis Montali added to case. Involvement of Judge Arthur S. Weissbrodt Terminated.(Admin.) (Entered: 07/01/2015) |
| 07/01/2015 | 29 (1 pg) | Order To Continue Hearing (RE: related document(s)6 Notice of Status Conference, 14 Order to Show Cause, 20 Application to Employ filed by Debtor Saul Roberto Flores). **Status Conference scheduled for 9/23/2015 at 11:30 AM San Jose Courtroom 3070 for 6, .** 9/23/2015 at 11:30 AM San Jose Courtroom 3070 for 14, **Hearing scheduled for 9/23/2015 at 11:30 AM San Jose Courtroom 3070 for 20, .** (tm) (Entered: 07/02/2015) |
| 07/02/2015 | 26 (7 pgs; 3 docs) | Application to Employ Mike Stone as Special Counsel to Debtor Filed by Debtor Saul Roberto Flores (Attachments: # 1 Exhibit A # 2 Declaration) (Greene, Charles) (Entered: 07/02/2015) |
| 07/02/2015 | 27 (4 pgs; 2 docs) | Notice of Hearing (RE: related document(s)26 Application to Employ Mike Stone as Special Counsel to Debtor Filed by Debtor Saul Roberto Flores (Attachments: # 1 Exhibit A # 2 Declaration)). **Hearing scheduled for 8/5/2015 at 01:30 PM at San Jose Courtroom 3070.** Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 07/02/2015) |
| 07/02/2015 | 28 (3 pgs) | Amended Exhibit *A* (RE: related document(s)26 Application to Employ). Filed by Debtor Saul Roberto Flores (Greene, |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 57 of 78

| | | Charles) ERROR: EXHIBIT COVERSHEET NOT FILED. Modified on 7/2/2015 (clc). (Entered: 07/02/2015) |
|---|---|---|
| 07/03/2015 | <u>30</u> (2 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>25</u> Case Reassignment). Notice Date 07/03/2015. (Admin.) (Entered: 07/04/2015) |
| 07/10/2015 | <u>31</u> (2 pgs) | Amended Order Rescheduling Hearings (RE: related document(s)<u>6</u> Notice of Status Conference, <u>14</u> Order to Show Cause, <u>20</u> Application to Employ filed by Debtor Saul Roberto Flores, <u>29</u> Order to Continued Hearing). **Status Conference scheduled for 8/5/2015 at 11:30 AM San Jose Courtroom 3070 for <u>6</u>, . 8/5/2015 at 11:30 AM San Jose Courtroom 3070 for <u>14</u>, Hearing scheduled for 8/5/2015 at 11:30 AM San Jose Courtroom 3070 for <u>20</u>, .** (jes) (Entered: 07/10/2015) |
| 07/13/2015 | <u>32</u> (3 pgs) | Schedule J (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 11)). Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 07/13/2015) |
| 07/20/2015 | | **DOCKET TEXT ORDER** (no separate order issued:) At least one week prior to the August 5, 2015, 11:30 AM hearing on the application to retain Mr. Stone as special counsel, Debtor should file a declaration explaining the source of the $10,000 retainer he wants to pay. He should also explain how successful prosecution of the anticipated action will provide a net benefit for unsecured creditors since it apparently will seek a reduction in mortgage payments on the primary residence of the debtor. (Montali, Dennis) (Entered: 07/20/2015) |
| 07/23/2015 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued *Track # 1, 341 MOC 7/22/15. Meeting continued to August 5, 2015 at 10:30 am. Appearances by Flores, Charles B. Greene (debtors counsel), Colbert Tang (IRS).* 341(a) meeting to be held on 8/5/2015 at 10:30 AM San Jose Room 268 (Hsu, Shining) (Entered: 07/23/2015) |
| 07/24/2015 | <u>33</u> (31 pgs) | Amended Schedule B, Schedule G, Schedule H, Schedule I,. , Amended Schedule D Schedule E Schedule F . Fee Amount $30., Amended Chapter 11 Statement of Current Monthly Income (Form 22B) , Amended Statement of Financial Affairs Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 07/24/2015) |
| 07/24/2015 | <u>34</u> (3 pgs) | Amended Creditor Matrix Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 07/24/2015) |
| 07/24/2015 | | Receipt of filing fee for Amended Schedules (D, E, and F - Fee Required)(15-51705) [misc,amdsch] ( 30.00). Receipt number 25062902, amount $ 30.00 (re: Doc# <u>33</u> Amended Schedules |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 58 of 78

|            |                        | (D, E, and F - Fee Required)) (U.S. Treasury) (Entered: 07/24/2015) |
|------------|------------------------|--------------------------------------------------------------------|
| 07/24/2015 | <u>35</u><br>(4 pgs)   | Operating Report for Filing Period 6/2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 07/24/2015) |
| 07/24/2015 | <u>36</u><br>(4 pgs; 2 docs) | Status Conference Statement (RE: related document(s)6 Notice of Status Conference). Filed by Debtor Saul Roberto Flores (Attachments: # <u>1</u> Certificate of Service) (Greene, Charles) (Entered: 07/24/2015) |
| 07/24/2015 | <u>37</u><br>(4 pgs; 2 docs) | Declaration of Debtor in Re. Motion to Employ Special Counsel of (RE: related document(s)26 Application to Employ). Filed by Debtor Saul Roberto Flores (Attachments: # <u>1</u> Certificate of Service) (Greene, Charles) (Entered: 07/24/2015) |
| 07/27/2015 | <u>38</u><br>(9 pgs)   | Operating Report for Filing Period May 2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 07/27/2015) |
| 08/03/2015 | <u>39</u><br>(2 pgs)   | Amended Summary of Schedules AND STATISTICAL SUMMARY OF CERTAIN LIABILITIES AND RELATED DATA. Filed by Debtor Saul Roberto Flores (Greene, Charles) CORRECTIVE ENTRY: COURT ADDED LINKAGE TO RELATED DOCUMENT. Modified on 8/3/2015 (clc). (Entered: 08/03/2015) |
| 08/04/2015 | <u>40</u><br>(2 pgs)   | Amended Schedule G,. Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 08/04/2015) |
| 08/05/2015 |                        | Hearing Held. Motion granted. Counsel to upload an order. (related document(s): <u>20</u> Application to Employ filed by Saul Roberto Flores) (lp ) (Entered: 08/05/2015) |
| 08/05/2015 |                        | Hearing Held. The Order to Show Cause is discharged; no written order to follow. (related document(s): <u>14</u> Order to Show Cause) (lp ) (Entered: 08/05/2015) |
| 08/05/2015 |                        | Hearing held and continued. The debtor is ordered to file a Combined Plan and Disclosure Statement and Notice of Hearing by 12/8/15. A hearing on tentative approval of the Disclosure Statement will be held on 12/22/15 at 11:30 a.m. (related document(s): <u>6</u> Notice of Status Conference) **Hearing scheduled for 12/22/2015 at 11:30 AM at San Jose Courtroom 3070.** (lp ) (Entered: 08/05/2015) |
| 08/05/2015 | <u>41</u><br>(1 pg)    | 🔊 PDF with attached Audio File. Court Date & Time [ 8/5/2015 11:51:52 AM ]. File Size [ 3384 KB ]. Run Time [ 00:14:06 ]. (admin). (Entered: 08/05/2015) |
| 08/06/2015 |                        | Meeting of Creditors Held. *Tracks # 4-5, 341 MOC 8/5/15.* |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 59
of 78

| | | |
|---|---|---|
| | | *Meeting concluded. Appearances by Flores, Charles B. Greene (debtors counsel), Colbert Tang (IRS).* (Hsu, Shining) (Entered: 08/06/2015) |
| 08/31/2015 | 42 (49 pgs; 5 docs) | Motion for Relief from Stay *with Certificate of Service* RS #MDE-1582, Fee Amount $176, Filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # 1 RS Cover Sheet # 2 Memorandum of Points and Authorities # 3 Declaration # 4 Exhibit) (Estle, Mark) (Entered: 08/31/2015) |
| 08/31/2015 | 43 (2 pgs) | Notice of Hearing *On Motion For Relief From Automatic Stay with Certificate of Service* (RE: related document(s)42 Motion for Relief from Stay *with Certificate of Service* RS #MDE-1582, Fee Amount $176, Filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # 1 RS Cover Sheet # 2 Memorandum of Points and Authorities # 3 Declaration # 4 Exhibit)). **Hearing scheduled for 9/23/2015 at 11:30 AM at San Jose Courtroom 3070.** Filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Estle, Mark) (Entered: 08/31/2015) |
| 08/31/2015 | 44 (2 pgs) | Certificate of Service (RE: related document(s)42 Motion for Relief From Stay, 43 Notice of Hearing). Filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Estle, Mark) (Entered: 08/31/2015) |
| 08/31/2015 | | Receipt of filing fee for Motion for Relief From Stay(15-51705) [motion,mrlfsty] ( 176.00). Receipt number 25248251, amount $ 176.00 (re: Doc# 42 Motion for Relief from Stay *with Certificate of Service* RS #MDE-1582, Fee Amount $176,) (U.S. Treasury) (Entered: 08/31/2015) |
| 09/04/2015 | 45 (1 pg) | Amended Relief From Stay Cover Sheet *with Certificate of Service* (RE: related document(s)42 Motion for Relief From Stay). Filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Estle, Mark) (Entered: 09/04/2015) |
| 09/04/2015 | 46 (2 pgs) | Certificate of Service (RE: related document(s)45 Relief From Stay Cover Sheet). Filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., |

Case: 18-52014  Doc# 111-4  Filed: 12/04/19  Entered: 12/04/19 16:03:20  Page 60 of 78

| | | |
|---|---|---|
| | | ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Estle, Mark) (Entered: 09/04/2015) |
| 09/08/2015 | 47 (3 pgs) | Order Granting Application to Employ Attorney Michael E. Stone as Special Counsel for Saul Roberto Flores Added to the Case (Related Doc # 26) (tm) (Entered: 09/08/2015) |
| 09/09/2015 | 48 (4 pgs; 2 docs) | Notice Regarding *Errata on Motion for Relief from Automatic Stay, With Certificate of Service* (RE: related document(s)42 Motion for Relief from Stay *with Certificate of Service* RS #MDE-1582, Fee Amount $176, Filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # 1 RS Cover Sheet # 2 Memorandum of Points and Authorities # 3 Declaration # 4 Exhibit)). Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006- OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # 1 Certificate of Service) (Estle, Mark) (Entered: 09/09/2015) |
| 09/17/2015 | 49 (5 pgs; 2 docs) | Interim Stipulation for Adequate Protection *re: Motion for Relief from Automatic Stay, with Certificate of Service* Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006- OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (RE: related document(s)42 Motion for Relief From Stay filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10). (Attachments: # 1 Certificate of Service) (Estle, Mark) (Entered: 09/17/2015) |
| 09/18/2015 | | **DOCKET TEXT ORDER** (no separate order issued:) Per the Interim Stipulation filed September 17, 2015, (Dkt. No. 49), the hearing on the motion for relief from stay (Dkt. No. 42) is continued from September 23, 2015, to December 22, 2015, at 11:30 AM. (RE: related document(s)42 Motion for Relief From Stay filed by Creditor The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10). (Montali, Dennis) (Entered: 09/18/2015) |
| 09/18/2015 | | Hearing Continued per the Interim Stipulation for Adequate Protection filed on 9/17/15 (dkt #49). (related document(s): 42 Motion for Relief From Stay filed by The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE |

Case: 18-52014 Doc# 111-4 Filed: 12/04/19 Entered: 12/04/19 16:03:20 Page 61 of 78

| | | PASS-THROUGH CERTIFICATES, SERIES 2006-OA10) **Hearing scheduled for 12/22/2015 at 11:30 AM at San Jose Courtroom 3070.** (lp ) (Entered: 09/18/2015) |
|---|---|---|
| 09/20/2015 | 50 (12 pgs) | Operating Report for Filing Period 8/2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 09/20/2015) |
| 09/21/2015 | 51 (9 pgs) | Operating Report for Filing Period 7/2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 09/21/2015) |
| 10/21/2015 | 52 (10 pgs) | Operating Report for Filing Period 9/2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 10/21/2015) |
| 11/23/2015 | 53 (8 pgs) | Operating Report for Filing Period 10/2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 11/23/2015) |
| 12/08/2015 | 54 (3 pgs; 2 docs) | Status Conference Statement (RE: related document(s)6 Notice of Status Conference). Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 12/08/2015) |
| 12/21/2015 | 55 (5 pgs) | Operating Report for Filing Period 11/2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 12/21/2015) |
| 12/22/2015 | | Hearing Held. Motion granted; counsel for the moving party to serve order on Mr. Greene. (related document(s): 42 Motion for Relief From Stay filed by The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10) (lp ) (Entered: 12/22/2015) |
| 12/22/2015 | | Hearing held and continued (related document(s): 6 Notice of Status Conference) **Hearing scheduled for 02/10/2016 at 11:30 AM at San Jose Courtroom 3070.** (lp ) (Entered: 12/22/2015) |
| 12/22/2015 | 56 (1 pg) | ◀)) PDF with attached Audio File. Court Date & Time [ 12/22/2015 11:45:14 AM ]. File Size [ 4324 KB ]. Run Time [ 00:18:01 ]. (admin). (Entered: 12/22/2015) |
| 01/04/2016 | 57 (3 pgs; 2 docs) | Motion to Dismiss Case Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration) (Greene, Charles) (Entered: 01/04/2016) |
| 01/04/2016 | 58 (4 pgs; 2 docs) | Notice of Hearing (RE: related document(s)57 Motion to Dismiss Case Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration)). **Hearing scheduled for 1/27/2016 at 01:30 PM at San Jose Courtroom 3070.** Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 01/04/2016) |

Case: 18-52014   Doc# 111-4   Filed: 12/04/19   Entered: 12/04/19 16:03:20   Page 62 of 78

| 01/20/2016 | 59<br>(5 pgs) | Operating Report for Filing Period 12/2015 Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 01/20/2016) |
| 01/27/2016 | | Hearing Held. The motion is granted; Mr. Greene to upload an order. (related document(s): 57 Motion to Dismiss Case filed by Saul Roberto Flores) (lp ) (Entered: 01/27/2016) |
| 01/27/2016 | 60<br>(1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 1/27/2016 1:50:56 PM ]. File Size [ 240 KB ]. Run Time [ 00:01:00 ]. (admin). (Entered: 01/27/2016) |
| 01/28/2016 | 61<br>(5 pgs; 3 docs) | Order Granting Motion to Dismiss Case (Related Doc # 57) (no) (Entered: 01/28/2016) |
| 01/28/2016 | | Bankruptcy Case Closed. (no) (Entered: 01/28/2016) |
| 01/30/2016 | 62<br>(4 pgs) | BNC Certificate of Mailing - Notice of Dismissal. (RE: related document(s) 61 Order on Motion to Dismiss Case). Notice Date 01/30/2016. (Admin.) (Entered: 01/30/2016) |

| PACER Service Center | | | |
| --- | --- | --- | --- |
| **Transaction Receipt** | | | |
| 12/04/2019 15:20:53 | | | |
| **PACER Login:** | Hilary89:3099210:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 15-51705 Fil or Ent: filed From: 10/4/2010 To: 12/4/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 7 | **Cost:** | 0.70 |

Case: 18-52014     Doc# 111-4     Filed: 12/04/19     Entered: 12/04/19 16:03:20     Page 63 of 78

**CLOSED, PlnDue, DsclsDue, DebtEd, DISMISSED**

# U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Jose)
### Bankruptcy Petition #: 16-50429

|  |  |
|---|---|
| *Date filed:* | 02/15/2016 |
| *Date terminated:* | 04/29/2016 |
| *Debtor dismissed:* | 04/29/2016 |
| *341 meeting:* | 05/18/2016 |
| *Deadline for objecting to discharge:* | 05/16/2016 |

*Assigned to:* Judge Dennis Montali
Chapter 11
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason

| | |
|---|---|
| **Debtor** | represented by **Charles B. Greene** |
| **Saul Roberto Flores** | Law Offices of Charles B. Greene |
| 7076 Kindra Hill Drive | 84 W Santa Clara St. #800 |
| San Jose, CA 95120 | San Jose, CA 95113 |
| SANTA CLARA-CA | (408) 279-3518 |
| SSN / ITIN: xxx-xx-7647 | Email: cbgattyecf@aol.com |
| *aka* Saul R. Flores | |
| | |
| **U.S. Trustee** | represented by **Julie Glosson Ishii** |
| **Office of the U.S. Trustee / SJ** | Glosson Law |
| U.S. Federal Bldg. | P.O. Box 1131 |
| 280 S 1st St. #268 | Pleasanton, CA 94566 |
| San Jose, CA 95113-3004 | (925) 400-8161 |
| ( ) | Email: Julie@jglossonlaw.com |

| Filing Date | # | Docket Text |
|---|---|---|
| 02/15/2016 | 1 (51 pgs) | Chapter 11 Voluntary Petition for Individual WITH 20 LARGEST UNSECURED CREDITORS , Fee Amount $1717, Filed by Saul Roberto Flores. Order Meeting of Creditors due by 02/22/2016.Incomplete Filings due by 02/29/2016. (Greene, Charles). CORRECTIVE ENTRY:COURT MODIFIED DOCKET TEXT TO REFLECT ADDITIONAL ITEM FILED. Modified on 2/16/2016 (klr). (Entered: 02/15/2016) |
| 02/15/2016 | 2 | Statement of Social Security Number. Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 02/15/2016) |
| 02/15/2016 | 3 (1 pg) | Certificate of Credit Counseling Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 02/15/2016) |
| 02/15/2016 | | Receipt of filing fee for Voluntary Petition (Chapter 11)(16-50429) [misc,volp11] (1717.00). Receipt number 25957133, amount $1717.00 (re: Doc# 1 Voluntary Petition (Chapter 11)) (U.S. Treasury) (Entered: 02/15/2016) |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 64 of 78

| 02/15/2016 | | First Meeting of Creditors with 341(a) meeting to be held on 03/16/2016 at 09:30 AM at San Jose Room 268. Last Day to Determine Dischargeability of Certain Debts due by 05/16/2016. Proof of Claim due by 06/14/2016. (Greene, Charles) (Entered: 02/15/2016) |
| --- | --- | --- |
| 02/16/2016 | | Notice of Debtor's Prior Filings for debtor Saul Roberto Flores Case Number 15-51705, Chapter 11 filed in California Northern Bankruptcy Court on 05/19/2015 , Dismissed for Other Reason on 01/28/2016.(Admin) (Entered: 02/16/2016) |
| 02/16/2016 | 4 (3 pgs; 2 docs) | Order To File Required Documents and Notice Regarding Dismissal (klr) (Entered: 02/16/2016) |
| 02/16/2016 | 5 (3 pgs; 2 docs) | Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (klr) (Entered: 02/16/2016) |
| 02/16/2016 | 6 (5 pgs; 3 docs) | Application to Employ Charles B. Greene as Attorney for Debtor Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration # 2 Certificate of Service) (Greene, Charles) (Entered: 02/16/2016) |
| 02/16/2016 | 7 (6 pgs; 3 docs) | Motion to Extend Automatic Stay Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration # 2 Memorandum of Points and Authorities) (Greene, Charles) (Entered: 02/16/2016) |
| 02/16/2016 | 8 (5 pgs; 2 docs) | Notice and Opportunity for Hearing (RE: related document(s)7 Motion to Extend Automatic Stay Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration # 2 Memorandum of Points and Authorities)). Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 02/16/2016) |
| 02/16/2016 | 9 (2 pgs; 2 docs) | Order for Payment of State and Federal Taxes (admin) (Entered: 02/16/2016) |
| 02/17/2016 | 10 (9 pgs) | Order Establishing Procedures for Disclosure Statement Hearing and Confirmation Hearing (acr) (Entered: 02/17/2016) |
| 02/18/2016 | 11 (4 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) 5 Generate 341 Notices). Notice Date 02/18/2016. (Admin.) (Entered: 02/18/2016) |
| 02/18/2016 | 12 (3 pgs) | BNC Certificate of Mailing (RE: related document(s) 4 Order to File Missing Documents). Notice Date 02/18/2016. (Admin.) (Entered: 02/18/2016) |
| 02/19/2016 | 13 (2 pgs) | BNC Certificate of Mailing - Payment of State and Fed Taxes. (RE: related document(s) 9 Order for Payment of State and Federal Taxes). Notice Date 02/19/2016. (Admin.) (Entered: 02/19/2016) |

Case: 18-52014   Doc# 111-4   Filed: 12/04/19   Entered: 12/04/19 16:03:20   Page 65 of 78

| 02/23/2016 | <u>14</u><br>(2 pgs) | Amended Declaration of Charles B. Greene in Support of (RE: related document(s)<u>6</u> Application to Employ). Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 02/23/2016) |
|---|---|---|
| 02/24/2016 | <u>15</u><br>(2 pgs) | Order Authorizing Appointment of Attorney Charles B. Greene for Saul Roberto Flores Added to the Case (Related Doc # <u>6</u>) (acr) (Entered: 02/24/2016) |
| 02/29/2016 | <u>16</u><br>(12 pgs) | Schedule I: for Individual Your Income , Schedule J: for Individual- Your Expenses , DECLARATION ABOUT AN INDIVIDUAL DEBTOR'S SCHEDULES AND Statement of Financial Affairs for Individual Filed by Debtor Saul Roberto Flores (Greene, Charles) CORRECTIVE ENTRY: COURT MODIFIED THE DOCKET TEXT TO REFLECT THE PDF. Modified on 3/1/2016 (acr). (Entered: 02/29/2016) |
| 02/29/2016 | <u>17</u><br>(3 pgs) | Chapter 11 Statement of Current Monthly Income ( Filed by Debtor Saul Roberto Flores (Greene, Charles) (Entered: 02/29/2016) |
| 03/01/2016 | <u>18</u><br>(8 pgs; 3 docs) | Brief/Memorandum in Opposition to *Debtor's Motion to Extend Automatic Stay and Request for Hearing Thereon, With Certificate of Service* (RE: related document(s)<u>7</u> Motion to Extend Automatic Stay). Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # <u>1</u> Exhibit # <u>2</u> Certificate of Service) (Estle, Mark) (Entered: 03/01/2016) |
| 03/04/2016 | <u>19</u><br>(1 pg) | Notice of Appearance and Request for Notice by Julie M. Glosson. Filed by U.S. Trustee Office of the U.S. Trustee / SJ (Glosson, Julie) (Entered: 03/04/2016) |
| 03/04/2016 | <u>20</u><br>(8 pgs; 3 docs) | Declaration in support of *Opposition to Debtor's Motion to Extend Automatic Stay and Request for Hearing Thereon, With Certificate of Service* (RE: related document(s)<u>18</u> Opposition Brief/Memorandum). Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # <u>1</u> Exhibit # <u>2</u> Certificate of Service) (Estle, Mark) CORRECTIVE ENTRY: COURT REMOVED DOCKET TEXT TO REFLECT THE PDF. Modified on 3/7/2016 (acr). (Entered: 03/04/2016) |
| 03/07/2016 | <u>21</u><br>(4 pgs; 2 docs) | Motion to Expedite Hearing (RE: related document(s)<u>7</u> Motion to Extend Automatic Stay filed by Debtor Saul Roberto Flores). Filed by Debtor Saul Roberto Flores (Attachments: # <u>1</u> Declaration) (Greene, Charles) (Entered: 03/07/2016) |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 66 of 78

| 03/09/2016 | <u>22</u><br>(1 pg) | Order Shortening Time for Notice of Hearing on Motion to Extend Automatic Stay (Related Doc <u>7</u> Motion to Extend Automatic Stay) **Hearing scheduled for 3/14/2016 at 01:30 PM at San Francisco Courtroom 17 - Montali.** (acr). (Entered: 03/09/2016) |
| 03/10/2016 | <u>23</u><br>(3 pgs) | Request for Notice Filed by Creditor Hopkins & Carley, ALC (Kottmeier, Stephen) (Entered: 03/10/2016) |
| 03/10/2016 | | **DOCKET TEXT ORDER** (no separate order issued:) TENTATIVE RULING ON MOTION TO EXTEND STAY. DENY, based on the opposition that shows debtor requested a short sale, not a loan modification. If debtor accepts this tentative, his counsel should notify opposing counsel and the courtroom deputy (Ms. Lorena Parada, 415-268-2323, lorena_parada@canb.uscourts.gov) no later than 4:30 PM on March 11, 2016, in which case the matter will be dropped from calendar and counsel for respondent should serve and upload an order denying the motion for the reasons stated in this tentative ruling. If debtor does not accept the tentative, and wishes to be heard on the motion, then no later than 9:00 AM on March 14, 2016 he should file a declaration under penalty of perjury attaching copies of all documents referred to at 2:10 in his declaration (Dkt. No. 7-1). (Montali, Dennis) (Entered: 03/10/2016) |
| 03/10/2016 | <u>24</u><br>(3 pgs; 2 docs) | DEBTOR'S Reply TO OPPOSITION (RE: related document(s)<u>20</u> Declaration). Filed by Debtor Saul Roberto Flores (Attachments: # <u>1</u> Certificate of Service) (Greene, Charles) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO REFLECT THE PDF. Modified on 3/11/2016 (acr). (Entered: 03/10/2016) |
| 03/10/2016 | <u>25</u><br>(2 pgs; 2 docs) | Notice of Hearing (RE: related document(s)<u>7</u> Motion to Extend Automatic Stay Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration # 2 Memorandum of Points and Authorities)). **Hearing scheduled for 3/14/2016 at 01:30 PM at San Francisco Courtroom 17 - Montali.** Filed by Debtor Saul Roberto Flores (Attachments: # <u>1</u> Certificate of Service) (Greene, Charles) (Entered: 03/10/2016) |
| 03/14/2016 | <u>26</u><br>(5 pgs; 3 docs) | Declaration of Debtor in Support of (RE: related document(s)<u>7</u> Motion to Extend Automatic Stay). Filed by Debtor Saul Roberto Flores (Attachments: # <u>1</u> Exhibit A # <u>2</u> Certificate of Service) (Greene, Charles) (Entered: 03/14/2016) |
| 03/14/2016 | | Hearing Held. The motion is denied in part and granted in part. As of 3/28/16 there is no stay in effect. Mr. Greene will upload an order. (related document(s): <u>7</u> Motion to Extend Automatic Stay filed by Saul Roberto Flores) (lp ) (Entered: 03/14/2016) |
| 03/14/2016 | <u>27</u> | 🔊 PDF with attached Audio File. Court Date & Time [ |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 67 of 78

| | | |
|---|---|---|
| | (1 pg) | 3/14/2016 1:18:06 PM ]. File Size [ 4610 KB ]. Run Time [ 00:19:13 ]. (admin). (Entered: 03/14/2016) |
| 03/16/2016 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued . 341(a) meeting to be held on 3/30/2016 at 10:30 AM San Jose Room 268 (Hsu, Shining) (Entered: 03/16/2016) |
| 03/16/2016 | 28 (4 pgs; 2 docs) | Notice Regarding *Continued Meeting of Creditors* (RE: related document(s)5 Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (klr), Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued . 341(a) meeting to be held on 3/30/2016 at 10:30 AM San Jose Room 268). Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 03/16/2016) |
| 03/17/2016 | 29 (2 pgs) | Order on Motion to Extend Automatic Stay (Related Doc # 7) (acr) (Entered: 03/17/2016) |
| 03/30/2016 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued . 341(a) meeting to be held on 4/27/2016 at 11:30 AM San Jose Room 268 (Hsu, Shining) (Entered: 03/30/2016) |
| 04/06/2016 | 30 (4 pgs; 2 docs) | Motion to Dismiss Case Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration) (Greene, Charles) (Entered: 04/06/2016) |
| 04/06/2016 | 31 (4 pgs; 2 docs) | Notice of Hearing (RE: related document(s)30 Motion to Dismiss Case Filed by Debtor Saul Roberto Flores (Attachments: # 1 Declaration)). **Hearing scheduled for 4/27/2016 at 01:30 PM at San Jose Courtroom 3070 - Montali.** Filed by Debtor Saul Roberto Flores (Attachments: # 1 Certificate of Service) (Greene, Charles)CORRECTIVE ENTRY: COURT MODIFIED COURT LOACTION AND MODIFIED DOCKET TEXT TO REFLECT THE SAME. Modified on 4/18/2016 (myt). (Entered: 04/06/2016) |
| 04/13/2016 | 32 (3 pgs) | Request for Notice Filed by Creditor Nationstar Mortgage, LLC (Clark, Matthew) (Entered: 04/13/2016) |
| 04/27/2016 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued . 341(a) meeting to be held on 5/18/2016 at 08:30 AM San Jose Room 268 (Glosson, Julie) (Entered: 04/27/2016) |
| 04/27/2016 | | Hearing Held. Motion granted; debtor's counsel will upload an order. (related document(s): 30 Motion to Dismiss Case filed by Saul Roberto Flores) (lp ) (Entered: 04/27/2016) |
| 04/27/2016 | 33 | |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 68 of 78

| | | |
|---|---|---|
| | (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 4/27/2016 1:41:56 PM ]. File Size [ 468 KB ]. Run Time [ 00:01:57 ]. (admin). (Entered: 04/27/2016) |
| 04/29/2016 | <u>34</u><br>(6 pgs; 4 docs) | Order Approving Motion to Dismiss Chapter 11 Case (Related Doc # <u>30</u>) (acr) (Entered: 04/29/2016) |
| 04/29/2016 | | Bankruptcy Case Closed. (acr) (Entered: 04/29/2016) |
| 05/01/2016 | <u>35</u><br>(3 pgs) | BNC Certificate of Mailing - Notice of Dismissal.  (RE: related document(s) <u>34</u> Order on Motion to Dismiss Case). Notice Date 05/01/2016. (Admin.) (Entered: 05/01/2016) |
| 05/01/2016 | <u>36</u><br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>34</u> Order on Motion to Dismiss Case). Notice Date 05/01/2016. (Admin.) (Entered: 05/01/2016) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/04/2019 15:14:21 | | |
| **PACER Login:** | Hilary89:3099210:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 16-50429 Fil or Ent: filed From: 10/4/2010 To: 12/4/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 4 | **Cost:** | 0.40 |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 69 of 78

**PlnDue, DsclsDue, DebtEd, DISMISSED, CLOSED**

## U.S. Bankruptcy Court
## California Northern Bankruptcy Court (San Jose)
## Bankruptcy Petition #: 16-52273

|  |  |
|---|---|
| *Date filed:* | 08/08/2016 |
| *Date terminated:* | 04/04/2018 |
| *Debtor dismissed:* | 03/20/2018 |
| *341 meeting:* | 09/20/2016 |
| *Deadline for objecting to discharge:* | 10/31/2016 |

*Assigned to:* Judge M. Elaine Hammond
Chapter 11
Voluntary
Asset

*Debtor disposition:* Dismissed for Other Reason

**Debtor**
**Jacqueline Lopez Flores**
7076 Kindra Hill Drive
San Jose, CA 95120
SANTA CLARA-CA
SSN / ITIN: xxx-xx-1432

represented by **Charles B. Greene**
Law Offices of Charles B. Greene
84 W Santa Clara St. #800
San Jose, CA 95113
(408) 279-3518
Email: cbgattyecf@aol.com

**U.S. Trustee**
**Office of the U.S. Trustee / SJ**
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
( )

represented by **Shining J. Hsu**
Office of the United States Trustee
280 S 1st St, #268
San Jose, CA 95113
(408)535.5525
Email: shining.j.hsu@gmail.com
*TERMINATED: 03/08/2017*

**Margaret H. McGee**
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102
(415) 705-3333
Fax : (415) 705-3379
Email: maggie.mcgee@usdoj.gov

**Cody James Wisniewski**
Office of the United States Trustee
280 S 1st St. #268
San Jose, CA 95113
(408) 535-5525
Email: cody.j.wisniewski@usdoj.gov
*TERMINATED: 09/13/2017*

| Filing Date | # | Docket Text |
|---|---|---|
| 08/08/2016 | <u>1</u><br>(17 pgs) | Chapter 11 Voluntary Petition for Individual, Fee Amount $1717, Filed by Jacqueline Lopez Flores. Order Meeting of |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 70 of 78

| | | |
|---|---|---|
| | | Creditors due by 08/15/2016.Incomplete Filings due by 08/22/2016. (Greene, Charles) ERROR: CREDITOR MATRIX COVER SHEET IS MISSING. Modified on 8/10/2016 (rdr). (Entered: 08/08/2016) |
| 08/08/2016 | 2 | Statement of Social Security Number. Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 08/08/2016) |
| 08/08/2016 | 3 (1 pg) | Certificate of Credit Counseling Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 08/08/2016) |
| 08/08/2016 | | Receipt of filing fee for Voluntary Petition (Chapter 11)(16-52273) [misc,volp11] (1717.00). Receipt number 26593928, amount $1717.00 (re: Doc# 1 Voluntary Petition (Chapter 11)) (U.S. Treasury) (Entered: 08/08/2016) |
| 08/09/2016 | 4 (2 pgs; 2 docs) | Order for Payment of State and Federal Taxes (admin) (Entered: 08/09/2016) |
| 08/10/2016 | | First Meeting of Creditors with 341(a) meeting to be held on 08/30/2016 at 09:00 AM at San Jose Room 268. Last Day to Determine Dischargeability of Certain Debts due by 10/31/2016. Proof of Claim due by 11/28/2016. (Greene, Charles) (Entered: 08/10/2016) |
| 08/10/2016 | 5 (3 pgs; 2 docs) | Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, and Deadlines (Generated) (rdr) (Entered: 08/10/2016) |
| 08/10/2016 | 6 (3 pgs; 2 docs) | Order To File Required Documents and Notice Regarding Dismissal (rdr) (Entered: 08/10/2016) |
| 08/10/2016 | 7 (4 pgs) | INITIAL DEBTOR INTERVIEW (IDI) by Shining J. Hsu. Filed by U.S. Trustee Office of the U.S. Trustee / SJ (Hsu, Shining) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO REFLECT PDF. Modified on 8/11/2016 (rdr). (Entered: 08/10/2016) |
| 08/11/2016 | 8 (1 pg) | Withdrawal of Documents *(Docket #7)* Filed by U.S. Trustee Office of the U.S. Trustee / SJ (Hsu, Shining) (Entered: 08/11/2016) |
| 08/11/2016 | 9 (1 pg) | Notice of Appearance and Request for Notice by Shining J. Hsu. Filed by U.S. Trustee Office of the U.S. Trustee / SJ (Hsu, Shining) (Entered: 08/11/2016) |
| 08/12/2016 | 10 (7 pgs) | Amended Voluntary Petition. Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) CORRECTIVE ENTRY: COURT REMOVED AKA TO REFLECT AMENDED PETITION. Modified on 8/12/2016 (rdr). (Entered: 08/12/2016) |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 71 of 78

| 08/12/2016 | <u>11</u><br>(4 pgs) | BNC Certificate of Mailing - Meeting of Creditors. (RE: related document(s) <u>5</u> Generate 341 Notices). Notice Date 08/12/2016. (Admin.) (Entered: 08/12/2016) |
| 08/12/2016 | <u>12</u><br>(2 pgs) | BNC Certificate of Mailing - Payment of State and Fed Taxes. (RE: related document(s) <u>4</u> Order for Payment of State and Federal Taxes). Notice Date 08/12/2016. (Admin.) (Entered: 08/12/2016) |
| 08/12/2016 | <u>13</u><br>(3 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>6</u> Order to File Missing Documents). Notice Date 08/12/2016. (Admin.) (Entered: 08/12/2016) |
| 08/15/2016 | <u>14</u><br>(5 pgs; 3 docs) | Application to Employ Charles B. Greene as Attorney for Debtor Filed by Debtor Jacqueline Lopez Flores (Attachments: # <u>1</u> Declaration # <u>2</u> Certificate of Service) (Greene, Charles) (Entered: 08/15/2016) |
| 08/22/2016 | <u>15</u><br>(35 pgs) | Summary of Assets and Liabilities For Individual Chapter 11 Cases: , Schedule A/B: Property - For Individual Chapter 11 Cases: , Schedule C , Schedule D For Individual Chapter 11 Cases: Creditors Having Claims Secured by Property , Schedule E/F : Creditors Who Have Unsecured Claims For Individual Chapter 11 Cases: , Schedule G: For Individual Chapter 11 Cases: , Schedule H: For Individual Chapter 11 Cases: , Schedule I: For Individual Chapter 11 Cases: Your Income , Schedule J: For Individual Chapter 11 Cases:- Your Expenses , Statement of Financial Affairs For Individual Chapter 11 Cases: , For Individual Chapter 11 Cases: List of Creditors Who Have 20 Largest Unsecured Claims Against You and Are Not Insiders , Disclosure of Compensation of Attorney for Debtor WITH CREDITOR MATRIX COVER SHEET Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO REFLECT PDF. Modified on 8/23/2016 (rdr). (Entered: 08/22/2016) |
| 08/22/2016 | <u>16</u><br>(3 pgs) | Chapter 11 Statement of Current Monthly Income ( Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 08/22/2016) |
| 08/23/2016 | <u>17</u><br>(9 pgs) | Order Establishing Procedures For Disclosure Statement Hearing and Confirmation Hearing (RE: related document(s)<u>1</u> Voluntary Petition (Chapter 11) filed by Debtor Jacqueline Lopez Flores). (rdr) (Entered: 08/24/2016) |
| 08/30/2016 | <u>18</u><br>(7 pgs) | Amended Voluntary Petition. Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 08/30/2016) |
| 09/01/2016 | | Statement Adjourning Meeting of 341(a) Meeting of Creditors. Meeting of Creditors Continued . 341(a) meeting to be held on |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 72 of 78

| | | |
|---|---|---|
| | | 9/20/2016 at 02:30 PM San Jose Room 268 (Hsu, Shining) (Entered: 09/01/2016) |
| 09/20/2016 | | Meeting of Creditors Held. *Meeting held 09/20/16. Meeting concluded.* (Hsu, Shining) (Entered: 09/20/2016) |
| 09/23/2016 | 19 (2 pgs) | Order Granting Application to Employ Attorney Charles B. Greene for Jacqueline Lopez Flores Added to the Case (Related Doc # 14) (rdr) (Entered: 09/23/2016) |
| 09/28/2016 | 20 (11 pgs) | Operating Report for Filing Period 8/2016 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 09/28/2016) |
| 11/07/2016 | 21 (61 pgs; 5 docs) | Motion for Relief from Stay RS #MDE-1724, Fee Amount $176, Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # 1 RS Cover Sheet # 2 Memorandum of Points and Authorities # 3 Declaration # 4 Exhibit) (Estle, Mark) (Entered: 11/07/2016) |
| 11/07/2016 | 22 (2 pgs) | Notice of Hearing *on Motion for in Rem Relief from Automatic Stay* (RE: related document(s)21 Motion for Relief from Stay RS #MDE-1724, Fee Amount $176, Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Attachments: # 1 RS Cover Sheet # 2 Memorandum of Points and Authorities # 3 Declaration # 4 Exhibit)). **Hearing scheduled for 12/14/2016 at 11:30 AM at San Jose Courtroom 3070.** Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Estle, Mark) (Entered: 11/07/2016) |
| 11/07/2016 | 23 (9 pgs) | Certificate of Service WITH LIST OF CREDITORS WHO HAVE THE 20 LARGEST UNSECURED CLAIMS AGAINST YOU AND ARE NOT INSIDERS (RE: related document(s)21 Motion for Relief From Stay, 22 Notice of Hearing). Filed by Creditor The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10 (Estle, Mark) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO REFLECT PDF. PAGES 3-9 OF PDF APPEARS TO BE FILED IN DUPLICATE. ERROR: CASE NUMBER |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 73 of 78

| | | |
|---|---|---|
| | | IS MISSING ON PAGE 3 OF PDF. Modified on  11/8/2016 (rdr). (Entered: 11/07/2016) |
| 11/07/2016 | | Receipt of filing fee for Motion for Relief From Stay(16-52273) [motion,mrlfsty] ( 176.00). Receipt number 26901608, amount $ 176.00 (re: Doc# 21 Motion for Relief  from Stay RS #MDE-1724, Fee Amount $176,) (U.S. Treasury) (Entered: 11/07/2016) |
| 11/21/2016 | 24 (8 pgs) | Operating Report for Filing Period 10/2016 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 11/21/2016) |
| 12/05/2016 | 25 (7 pgs) | Operating Report for Filing Period 9/2016 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 12/05/2016) |
| 12/06/2016 | 26 (11 pgs; 4 docs) | Opposition to MOTION FOR IN-REM RELIEF FROM AUTOMATIC STAY (RE: related document(s)21 Motion for Relief From Stay). Filed by Debtor Jacqueline Lopez Flores (Attachments: # 1 Exhibit A # 2 Declaration # 3 Certificate of Service) (Greene, Charles) CORRECTIVE ENTRY: COURT MODIFIED DOCKET TEXT TO REFLECT PDF. Modified on 12/7/2016 (rdr). (Entered: 12/06/2016) |
| 12/14/2016 | | Hearing Held. The motion is taken off calendar pending resolution of the Loan Modification Program. If the loan modification is denied and all appeals have been exhausted, the moving party may file a declaration and upload an order granting relief from stay. In the event that the debtor is in the process of selling the property and has a bona fide sale offer, the debtor may file a motion to reimpose the automatic stay. (related document(s): 21 Motion for Relief From Stay filed by The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OA10 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OA10) (lp ) (Entered: 12/14/2016) |
| 12/14/2016 | 27 (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 12/14/2016 11:33:10 AM ]. File Size [ 3224 KB ]. Run Time [ 00:13:26 ]. (admin). (Entered: 12/14/2016) |
| 12/21/2016 | 28 (7 pgs) | Operating Report for Filing Period 11/2016 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 12/21/2016) |
| 01/23/2017 | 29 (6 pgs) | Operating Report for Filing Period 12/2016 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 01/23/2017) |
| 02/21/2017 | 30 | Operating Report for Filing Period 1/2017 Filed by Debtor |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 74 of 78

| | (6 pgs) | Jacqueline Lopez Flores (Greene, Charles) (Entered: 02/21/2017) |
|---|---|---|
| 03/08/2017 | <u>31</u><br>(1 pg) | Substitution of Attorney . Attorney Shining J. Hsu terminated. Cody J. Wisniewski added to the case. Filed by U.S. Trustees Office of the U.S. Trustee / SJ, Office of the U.S. Trustee / SJ (Wisniewski, Cody) (Entered: 03/08/2017) |
| 03/22/2017 | <u>32</u><br>(7 pgs) | Operating Report for Filing Period 2/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 03/22/2017) |
| 04/18/2017 | <u>33</u><br>(6 pgs) | Operating Report for Filing Period 3/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 04/18/2017) |
| 05/09/2017 | <u>34</u><br>(2 pgs) | Notice of Appearance and Request for Notice by Jordan Lavinsky. Filed by Creditor VF MALL LLC (Lavinsky, Jordan) (Entered: 05/09/2017) |
| 06/05/2017 | <u>35</u><br>(3 pgs) | Amended Schedule E/F . Fee Amount $31. Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) CORRECTIVE ENTRY: Clerk added additional creditors to the database as listed on the PDF. Modified on 6/6/2017 (rdr). (Entered: 06/05/2017) |
| 06/05/2017 | | Receipt of filing fee for Amended Schedules (D, E, and F - Fee Required)(16-52273) [misc,amdsch] ( 31.00). Receipt number 27566309, amount $ 31.00 (re: Doc# <u>35</u> Amended Schedules (D, E, and F - Fee Required)) (U.S. Treasury) (Entered: 06/05/2017) |
| 06/20/2017 | <u>36</u><br>(8 pgs) | Operating Report for Filing Period 5/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 06/20/2017) |
| 07/27/2017 | <u>37</u><br>(6 pgs) | Operating Report for Filing Period *June 2017* Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 07/27/2017) |
| 07/31/2017 | <u>38</u><br>(7 pgs) | Operating Report for Filing Period 6/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 07/31/2017) |
| 08/25/2017 | <u>39</u><br>(6 pgs) | Operating Report for Filing Period 7/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 08/25/2017) |
| 09/13/2017 | <u>40</u><br>(1 pg) | Substitution of Attorney / *Notice of Substitution of Counsel*. Attorney Cody James Wisniewski terminated. Margaret H. McGee added to the case. Filed by U.S. Trustees Office of the |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 75 of 78

| | | U.S. Trustee / SJ, Office of the U.S. Trustee / SJ (McGee, Margaret) (Entered: 09/13/2017) |
|---|---|---|
| 09/21/2017 | 41 (8 pgs) | Operating Report for Filing Period 8/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 09/21/2017) |
| 10/13/2017 | 42 (3 pgs; 2 docs) | Judge M. Elaine Hammond added to case. Involvement of Judge Dennis Montali Terminated (pll) (Entered: 10/13/2017) |
| 10/15/2017 | 43 (3 pgs) | BNC Certificate of Mailing - Reassignment of Case. (RE: related document(s) 42 Case Reassignment). Notice Date 10/15/2017. (Admin.) (Entered: 10/15/2017) |
| 10/16/2017 | 44 (3 pgs; 2 docs) | Notice of **Status Conference scheduled for 10/26/2017 at 10:30 AM at San Jose Courtroom 3020 - Hammond.** (rdr) (Entered: 10/16/2017) |
| 10/17/2017 | 45 (7 pgs) | Operating Report for Filing Period 9/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 10/17/2017) |
| 10/18/2017 | 46 (3 pgs; 2 docs) | Status Conference Statement (RE: related document(s)44 Notice of Status Conference). Filed by Debtor Jacqueline Lopez Flores (Attachments: # 1 Certificate of Service) (Greene, Charles) (Entered: 10/18/2017) |
| 10/18/2017 | 47 (3 pgs) | BNC Certificate of Mailing - Notice of Status Conference in Ch 11. (RE: related document(s) 44 Notice of Status Conference). Notice Date 10/18/2017. (Admin.) (Entered: 10/18/2017) |
| 10/26/2017 | | Hearing Continued (related document(s): 44 Notice of Status Conference) **Hearing scheduled for 12/07/2017 at 10:30 AM at San Jose Courtroom 3020 - Hammond.** Appearances: Charles Greene on behalf of the debtor and Barbara Matthews for the UST. Debtor is required to file a combined plan and disclosure statement by 12/20/17. The court will issue an order. Continued to 12/7/17 at 10:30 am. (acr ) (Entered: 10/26/2017) |
| 10/26/2017 | 48 (4 pgs; 2 docs) | Order Setting Deadline To File Plan and Disclosure Statement **Status Conference scheduled for 12/7/2017 at 10:30 AM at San Jose Courtroom 3020 - Hammond.** (rdr) (Entered: 10/26/2017) |
| 10/26/2017 | 49 (1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 10/26/2017 10:47:02 AM ]. File Size [ 2232 KB ]. Run Time [ 00:09:18 ]. (admin). (Entered: 10/26/2017) |
| 10/28/2017 | 50 (4 pgs) | BNC Certificate of Mailing - Electronic Order (RE: related document(s) 48 Order To Set Hearing). Notice Date |

Case: 18-52014    Doc# 111-4    Filed: 12/04/19    Entered: 12/04/19 16:03:20    Page 76 of 78

| | | 10/28/2017. (Admin.) (Entered: 10/28/2017) |
|---|---|---|
| 10/30/2017 | <u>51</u><br>(7 pgs) | Operating Report for Filing Period 4/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 10/30/2017) |
| 11/07/2017 | <u>52</u><br>(2 pgs; 2 docs) | Notice of Proof of Claim Filed Pursuant to Rule 3004. Claim Number: 6 Creditor Name: Ropers Majeski et. al.. (rdr) (Entered: 11/07/2017) |
| 11/09/2017 | <u>53</u><br>(2 pgs) | BNC Certificate of Mailing (RE: related document(s) <u>52</u> Notice of Proof of Claim Rule 3004). Notice Date 11/09/2017. (Admin.) (Entered: 11/09/2017) |
| 11/21/2017 | <u>54</u><br>(7 pgs) | Operating Report for Filing Period 10/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 11/21/2017) |
| 11/27/2017 | <u>55</u><br>(3 pgs; 2 docs) | Status Conference Statement (RE: related document(s)<u>44</u> Notice of Status Conference). Filed by Debtor Jacqueline Lopez Flores (Attachments: # <u>1</u> Certificate of Service) (Greene, Charles) (Entered: 11/27/2017) |
| 12/05/2017 | <u>56</u><br>(3 pgs; 2 docs) | Motion to Dismiss Case Filed by Debtor Jacqueline Lopez Flores (Attachments: # <u>1</u> Declaration) (Greene, Charles) (Entered: 12/05/2017) |
| 12/05/2017 | <u>57</u><br>(4 pgs; 2 docs) | Notice of Hearing (RE: related document(s)<u>56</u> Motion to Dismiss Case Filed by Debtor Jacqueline Lopez Flores (Attachments: # 1 Declaration)). **Hearing scheduled for 1/18/2018 at 10:30 AM at San Jose Courtroom 3020 - Hammond.** Filed by Debtor Jacqueline Lopez Flores (Attachments: # <u>1</u> Certificate of Service) (Greene, Charles) (Entered: 12/05/2017) |
| 12/05/2017 | | Hearing Continued (related document(s): <u>44</u> Notice of Status Conference) **Hearing scheduled for 01/18/2018 at 10:30 AM at San Jose Courtroom 3020 - Hammond.** Continued to 1/18/18 at 10:30 am prior to the hearing. (acr) (Entered: 12/05/2017) |
| 12/21/2017 | <u>58</u><br>(7 pgs) | Operating Report for Filing Period 11/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 12/21/2017) |
| 01/18/2018 | | Hearing Held (related document(s): <u>44</u> Notice of Status Conference) Appearances: Charles Greene for debtor and Barbara Matthews for United States Trustee. Status conference off calendar. (tb) (Entered: 01/18/2018) |
| 01/18/2018 | | Hearing Held (related document(s): <u>56</u> Motion to Dismiss Case filed by Jacqueline Lopez Flores) Motion to dismiss is granted |

| | | subject to as set forth on the record. Mr. Greene to upload an order. (tb) (Entered: 01/18/2018) |
|---|---|---|
| 01/18/2018 | [59](#)<br>(1 pg) | 🔊 PDF with attached Audio File. Court Date & Time [ 1/18/2018 11:25:24 AM ]. File Size [ 400 KB ]. Run Time [ 00:01:40 ]. (admin). (Entered: 01/18/2018) |
| 01/24/2018 | [60](#)<br>(7 pgs) | Operating Report for Filing Period 12/2017 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 01/24/2018) |
| 02/01/2018 | [61](#)<br>(2 pgs; 2 docs) | Declaration of Debtor in Re. Disbursements of Filed by Debtor Jacqueline Lopez Flores (Attachments: # [1](#) Certificate of Service) (Greene, Charles) (Entered: 02/01/2018) |
| 03/02/2018 | [62](#)<br>(6 pgs) | Operating Report for Filing Period 1/2018 Filed by Debtor Jacqueline Lopez Flores (Greene, Charles) (Entered: 03/02/2018) |
| 03/20/2018 | [63](#)<br>(5 pgs; 3 docs) | Order Granting Motion to Dismiss Chapter 11 (11 U.S.C. §707, B.R. 1017) (Related Doc # [56](#)) Case Management Action due after 4/3/2018. (tb) (Entered: 03/20/2018) |
| 03/22/2018 | [64](#)<br>(3 pgs) | BNC Certificate of Mailing - Notice of Dismissal. (RE: related document(s) [63](#) Order on Motion to Dismiss Case). Notice Date 03/22/2018. (Admin.) (Entered: 03/22/2018) |
| 04/04/2018 | | Bankruptcy Case Closed. (dmf) (Entered: 04/04/2018) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 12/04/2019 15:25:56 | | |
| **PACER Login:** | Hilary89:3099210:0 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 16-52273 Fil or Ent: filed From: 10/4/2010 To: 12/4/2019 Doc From: 0 Doc To: 99999999 Term: included Headers: included Format: html Page counts for documents: included |
| **Billable Pages:** | 6 | **Cost:** | 0.60 |